STAS, Appellant, v. MILWAUKEE COUNTY CIVIL SERVICE COMMISSION, Respondent.

*No. 75–191. Argued December 1, 1976.—Decided February 1, 1977.*
(Also reported in 249 N. W. 2d 764.)

For the appellant there were briefs by *Curry First* and *Perry & First, S. C.,* and oral argument by *Curry First,* all of Milwaukee.

For the respondent the cause was argued by *Gerald G. Pagel,* assistant corporation counsel, with whom on the brief was *Robert P. Russell,* corporation counsel.

HEFFERNAN, J. The proceedings in the circuit court were on certiorari to review the dismissal of Gordon Stas, a deputy sheriff, by the Milwaukee County Civil Service Commission. The court dismissed the writ and, in effect, affirmed the Civil Service Commission's order of dismissal. Stas has appealed from the order of the circuit court and, in this court, contends that he was denied due process when the Civil Service Commission made a finding against him in respect to a matter on which he had not been charged and that he was denied due process when the Commission in its findings failed to state the reasons for the decision to terminate his employment. He also claims that there was not just cause shown for the termination of his employment, and that, even though some charges were arguably proved, the penalty was excessive. He claims that, on the certiorari review, the circuit court erred when it reviewed the evidence in the light most favorable to the Commission. He also alleges that the corporation counsel acted unconstitutionally, because, under the statutes, he was authorized to be an advisor to the Commission and that his conduct as a prosecutor before the Commission constituted an unconstitutional merger of the adjudicatory and prosecutorial function.

After a review of the entire record, we conclude that the evidence was sufficient to support the finding that

Stas made a false official statement, but we also conclude that the portion of Finding 4, ". . . the evidence . . . substantiates serious violations of the Rules and Regulations," is so vague as to be a nullity.[1] Only two of the findings—Finding 2, permitting unauthorized persons to visit prisoners, and Finding 3, making a false official statement—are supported by the evidence. Because the Commission rested its order of discharge on Findings 2, 3, and 4, that order must be set aside.

The record shows that the major incidents which underlay the complaint against Gordon Stas occurred near the end of September 1973. Prior to that time Stas had been an employee of the sheriff's department of Milwaukee County for almost ten years. The evidence later adduced at the commission hearing showed that his superiors, as well as his associates, considered him a competent and reliable deputy sheriff.

The evidence is undisputed that on September 22 and 23, 1973, Stas permitted several persons who were not immediate family members and whose admission to the House of Corrections for visitation purposes would be contrary to jail rules to visit a prisoner, Lee McKnight. These individuals included McKnight's girl friend, two unauthorized individuals, Dinkle and Butala, who came there ostensibly for the purpose of arranging bail for McKnight, and Hiemer, who delivered to McKnight a check drawn by McKnight's mother in the amount of $200. There was testimony that, after McKnight endorsed the check and returned it to Hiemer and received $200 from Hiemer, McKnight gave $80 to his girl friend, gave $100 to Stas, and kept $20 in his possession.

Although Stas contended that, since he was the only deputy sheriff on duty, it was within his discretion, pursuant to an understanding with the lieutenant, to permit

---

[1] Moreover, to the extent that this finding has any meaning, it embraces conduct not charged.

these visitors, the evidence shows that those visitors were unauthorized. During the course of the testimony, Stas admitted that he had permitted at least 10 visits to prisoners which were not authorized by the rules. As a consequence of this conduct and because in a written statement he had advised his superiors that unauthorized visits had not occurred, Milwaukee County Sheriff Michael S. Wolke on October 5, 1973, filed written specifications and charges against Stas. The charges were:

"1. Commencing on or about August 9th, 1973 and continuing through September 23rd, 1973 Deputy Gordon E. Stas violated Milwaukee County Sheriff's Department Rules and Procedures of the County Jail by authorizing and granting about 10 to 15 visits to persons not a member of the inmate's immediate family contrary to Jail Rule 10.7(1) and Civil Service Rule VII, Section 4(j).

"2. He has received $100.00 from an inmate for his cooperation in granting favors contrary to Civil Service Rule VII, Section 4(p).

"3. He made a false official statement in that his written report states that he did not permit certain unauthorized visits, which in fact he did do, contrary to Sheriff's Department Rules and Regulations #76.

"4. He granted special privileges to high risk prisoners awaiting trial by designating them as trustees and permitting them to leave their cells contrary to Jail Rule X B."

Subsequently, a hearing was held before the Commission on March 25 and 26, 1974. The sheriff's department was represented by an assistant corporation counsel, and Stas was represented by counsel of his own choosing.

On April 1, 1974, the Milwaukee County Civil Service Commission made the following findings of fact:

"1. . . .

"2. That between August 9, 1973 and September 23, 1973, he violated Milwaukee County Sheriff's Department Rules and Procedures of the County Jail by authorizing and granting about 10 to 15 visits to persons

not a member of the inmate's immediate family contrary to Jail Rule 10.7(1) and Civil Service Rule VII, Section 4(j).

"3. That he made a false official statement, filing a written report indicating that he did not permit certain unauthorized visits when in fact he did, contrary to Sheriff's Department Rules and Regulations #76.

"4. That the evidence does not substantiate the specific charge that he received $100.00 from an inmate for his cooperation in granting favors, but the evidence supportive of that charge substantiates serious violations of the Rules and Regulations of both the Sheriff's Department and the Civil Service Commission.

"5. That the conduct described in Finding 2, that described in Finding 3 and that described in Finding 4 are a serious violation of the Rules of the Sheriff's Department and the Civil Service Commission warranting the severest discipline."

On those findings the Commission concluded that Stas had violated the rules and regulations of his superior officers and ordered him discharged from the Milwaukee County classified service.

The record of the Commission was reviewed by the circuit court on writ of certiorari. The findings and order of the Commission were sustained, and the writ was dismissed.

As set forth above, in the circuit court and on this appeal, Stas objects to the role of the assistant corporation counsel. He points out correctly that sec. 63.10(2), Stats., permits "the presence of an assistant district attorney to act with the commission in an advisory capacity." It is conceded that sec. 59.456(5) makes the authorization contained in sec. 63.10(2) applicable to the corporation counsel in Milwaukee County. Sec. 59.456 (1), however, authorizes the corporation counsel to prosecute and defend actions and proceedings before any board or commission in which the county is interested.

It is argued by Stas that, therefore, an unconstitutional merger of functions has occurred, because the corpora-

tion counsel is authorized by the statutes to counsel and advise the Civil Service Commission and is also authorized to prosecute matters that come before the Commission.

From a complete review of the record, however, we see no merger of the prosecutorial and adjudicatory functions. The record is clear that, while the assistant corporation counsel indeed acted as a prosecutor, he appeared for the sheriff's department and not for the Commission, and there is not a scintilla of evidence to show that he advised the Commission or, by past duties, was privy to the Commission's deliberations or adjudicatory functions.

Stas was represented by competent counsel, the Commission was presided over by a competent lawyer, and there is no evidence of prosecutorial overreaching or evidence of any relationship between the Commission and the prosecutor which would give an aura of unfairness.

Stas was entitled to a due-process hearing. As a long-term, tenured civil service employee, his employment could not be terminated unless he was afforded the elements of due process. In *State ex rel. DeLuca v. Common Council of City of Franklin,* 72 Wis.2d 672, 242 N.W.2d 689 (1976), we pointed out that a city as an agency of the state is bound by the strictures of the Fourteenth Amendment. It is equally clear that a county is subject to the same constitutional restrictions and cannot discharge such an employee without due process of law. In *DeLuca,* we pointed out that an important element in the requirement of due process is assurance that the discharge be fairly accomplished where the cause for discharge would cast some cloud upon the reputation of the employee in the community. Because the charges here in effect charged Stas with taking a bribe, had such charge been proved, his discharge would have clouded his reputation and deprived him of the opportunity for future employment. As we said in *DeLuca, supra:*

"[The employee] was entitled to the full panoply of due-process protections, the minimum requirements of

which include a timely and adequate notice of the reasons for the discharge, an impartial decisionmaker, and the opportunity to confront and cross examine adverse witnesses." (at 679)

We are satisfied that Stas was given timely and adequate notice of the charges[2] against him, that the decisionmaker was impartial, and that Stas was given the opportunity to confront and cross-examine adverse witnesses.

We conclude, however, that the findings of fact are fatally deficient. Only Findings 2 and 3 are supported by the evidence.

Finding 2—that Stas "violated Milwaukee County Sheriff's Department Rules and Procedures of the County Jail by authorizing and granting about 10 to 15 visits to persons not a member of the inmate's immediate family" —is supported by Stas' admission, although he indeed argued that he had the discretion to permit such visits.

Finding 3—"That he made a false official statement, filing a written report indicating that he did not permit certain unauthorized visits when in fact he did"—although more a conclusion of law than a finding, is

---

[2] While the charges gave general notice of the matters with which the sheriff was concerned, the charges are vague and far from exemplary. The charges failed to give notice of the identity of the persons not authorized to have visitation privileges; they failed to state the date on which or the name of the inmate from whom Stas supposedly received $100; they failed to identify the "false official statement"; and they failed to identify the high risk prisoners who were improperly designated as "trustees." We, however, find no objection by Stas to the specificity of the charges, and Stas does not contend that he was unable to defend himself because of the vagueness of the specifications. We note again, however, that Finding 4 determined that Stas was guilty of conduct not clearly alleged in any of the charges. See footnote 1, *supra*.

supported by the testimony of the doorkeeper and Mc-Knight.

The false official statement referred to is apparently Exhibit No. 4, in which Stas admitted that he had authorized a pass for Dinkle and for another whose name he did not recall (apparently Butala). In his official statement he recited that on both days, September 22 and 23, these persons were refused visiting privileges by the deputies assigned at the House of Corrections. He further stated that neither of the above persons visited McKnight on either of the two days. It was apparently the position of the Commission that Dinkle and Butala in fact were permitted to see McKnight and, therefore, the statement embodied in Exhibit No. 4 was false. Stas' testimony before the Commission was consistent with his written statement. McKnight, however, testified that Stas brought Dinkle and Butala to see him on September 23. Finding 3 is supportable by the evidence.

Finding 4 states that the evidence:

". . . does not substantiate the specific charge that he received $100.00 from an inmate for his cooperation in granting favors, but the evidence supportive of that charge substantiates serious violations of the Rules and Regulations."

This finding is insufficient. It does not indicate what evidence substantiates violations of the rules and regulations and fails to state what rules and regulations were violated; and to the extent that this finding is supported, it refers to misconduct not charged.

What is captioned as Finding 5 is not a finding of fact at all but a conclusion of law. It recites:

"That the conduct described in Finding 2, that described in Finding 3 and that described in Finding 4 are a serious violation of the Rules of the Sheriff's Department and the Civil Service Commission warranting the severest discipline."

Only Finding 2 and Finding 3 are supported by the evidence. It is apparent from Finding 5 that it was the combined conduct described in Findings 2, 3, and 4 that impelled the Civil Service Commission to impose "the severest discipline." This court cannot conclude that the same discipline would have been imposed in the absence of a sufficient basis for one or more of these findings.

Finding 3, moreover, is a conclusion of law that Stas made a false official statement in respect to permitting unauthorized persons to visit McKnight. To reach the conclusion that this is a finding of fact supported by the evidence requires the reviewing court to do what the administrative agency should have done—that is, to cast the finding in terms of the evidence. While we have no doubt that a new and appropriate finding can be made, it is not the duty of this court to make findings, and we consider that the vague conclusion of law set forth as Finding 3 is insufficient.

While on remand that finding of fact can perhaps be corrected, Finding 4 cannot be. The meaning of Finding 4 is not clear. As Justice Cardozo stated in *United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 294 U.S. 499, 511 (1935), "We must know what a decision means before the duty becomes ours to say whether it is right or wrong."

In *Securities & Exchange Comm. v. Chenery Corp.*, 332 U.S. 194 (1947), the court explicated its earlier decision in *Securities & Exchange Comm. v. Chenery Corp.*, 318 U.S. 80 (1943), to require an adequate statement for the reasons for an order, since no order could be sustained unless the grounds upon which the agency rested its action were within the proper ambit of its power. The court announced what it called a "simple but fundamental rule of administrative law" (at 196) that

the basis for the agency's action as well as its underlying rationale must be stated. The court said:

"That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. . . .

". . . If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action. . . ." (at 196–97)

Applying that rationale, this court can neither review the Commission's exercise of power nor uphold its decision unless the facts upon which Finding 4 is premised are set forth and the rules and regulations alleged to have been violated are stated. In respect to this finding, it is impossible to determine whether the Commission acted properly. Accordingly, therefore, it is apparent that Finding 3 is a conclusion of law and Finding 4 is so vague as to be unreviewable. Neither Finding 3 nor 4 supports the ultimate conclusion that Stas was justly discharged. The evidence clearly supports only Finding 2, the finding in respect to permitting visits by unauthorized persons. To what extent the findings which we conclude are insufficient were relied upon by the Commission is unknown to this court.

A similar situation was confronted by this court in *State ex rel. Momon v. Milwaukee County Civil Service Comm.*, 61 Wis.2d 313, 212 N.W.2d 158 (1973). In that case this court found that there was evidence to support two charges against the employee, but no evidence that supported the third. The court in that case affirmed the Commission's findings of rule violations in respect to two charges, but remanded the cause to the circuit court with

directions to remand to the Commission for reconsideration and redetermination of the penalty, because on review it could not be determined what effect the defective finding had upon the Commission's ultimate decision. The court relied upon the following language from *Meehan v. Macy*, 392 F.2d 822, 839 (D.C. Cir., 1968) :

"'. . . it is unclear whether the three charges were deemed by the agency and the Civil Service Commission to constitute separate or cumulative grounds for discharge. We cannot treat errors as harmless since we don't know that a finding on Charge 1 alone would have resulted in a discharge—especially in light of the spectrum of punishments the agency could have imposed for conduct which, as already indicated, is not altogether void of Constitutional protection.'" (at 320, n. 6)

It is quite possible that the Commission based its conclusion—that discharge would be appropriate—on the facts which underlay Finding 4 in connection with the alleged payment of $100 to Stas; but, if the unstated facts upon which this finding is predicated could not in the eyes of a reviewing court constitute "serious violations," a discharge would not be sustained and the Commission itself might not have imposed such a penalty.

We accordingly conclude, in light of the deficiencies in Findings 3 and 4, and because Finding 5 is merely a repetitive conclusion of law, that the discharge cannot be sustained by this court. We do not conclude, however, that the discharge ordered by the Commission was *ipso facto* unsupportable; but on the basis of this record and because of the inadequacies of the findings, it is impossible to review the conduct of the Commission to determine whether it acted arbitrarily or capriciously in light of the facts.

In the event that the Commission, after further review, concludes that only Finding 2 is clearly sustained by the record, it may well reach the decision that some discipline less than discharge is warranted. We, accordingly,

remand the cause to the circuit court with directions to remand to the Commission for the reconsideration of Findings 3 and 4. Finding 5 is a total nullity and constitutes at best a conclusion of law. On the basis of a reexamination of the record, the Commission is authorized to make such findings as it deems appropriate under the evidence; and on the basis of such findings, it may impose discipline consistent with those findings.

Under the present state of the record, however, the discharge cannot be sustained, and the order of the circuit court is reversed.

*By the Court.*—Order reversed and cause remanded to the circuit court with directions to remand to the Milwaukee County Civil Service Commission for reconsideration of findings and redetermination of penalty, if any, consistent with this opinion.