Robin WEST, Petitioner-Respondent,†

v.

DEPARTMENT OF COMMERCE, Respondent-Appellant,

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN and the University of Wisconsin-Oshkosh, Respondents.

Court of Appeals

*No. 98–1693. Oral argument April 22, 1999.—Decided August 18, 1999.*

(Also reported in 601 N.W.2d 307.)

†Petition to review denied.

71

On behalf of the respondent-appellant, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Joseph R. Thomas*, assistant attorney general. There was oral argument by *Joseph R. Thomas*.

On behalf of the petitioner-respondent, there was a brief and oral argument by *John C. Talis* of *Lawton & Cates, S.C.* of Madison.

Before Brown, P.J., Nettesheim and Snyder, JJ.

BROWN, P.J.   When a campus police officer is assigned to perform the full range of patrol duties and yet is prohibited from carrying a firearm, is the potential for violent encounters a "recognized hazard likely to cause death or serious physical harm" of the type meant to be addressed by Wisconsin's public employee safety and health statute, § 101.055, STATS.?[1] We conclude, as a matter of law, that it is not. Because it is not, Robin West, the complaining officer in this case, was not entitled to a hearing on her complaint. We therefore reverse the circuit court's reversal of the Department of Commerce's (DeCom) decision.

West is a police officer at the University of Wisconsin-Oshkosh (UWO). As such, her duties include the full range of patrol activities, including the apprehension of lawbreakers. Pursuant to the UWO chancellor's policy, campus police may not carry a firearm unless they are transporting money or escorting others doing the same. After unsuccessful attempts to convince the chancellor to change his policy, West filed a complaint with DeCom alleging occupational safety and health violations. A DeCom safety inspector investigated the complaint and concluded that "[t]he university, by requiring employees to perform normal police duties [while unarmed] by responding to dangerous situations . . . are placing the officers in a hazardous situation, contrary to [§ ] 101.11(1) and (2),[STATS.]." The investigator prepared an order for UWO to "provide a safer working environment" by June 1, 1997. The order was never issued, however, because the investigator's supervisor concluded that DeCom "lack[ed] jurisdiction over the issuance and use of firearms by law enforcement personnel." Based on a review of federal decisions

---

[1] This question was certified to the supreme court. That court denied certification.

interpreting the Occupational Safety and Health Act (OSHA), 29 U.S.C.A. §§ 651–678 (West 1999) (providing coextensive protection with Wisconsin's public employee safety and health statute, *see* § 101.055(1), STATS.), DeCom determined that the "occupational safety and health act . . . [is] limited to physical conditions in the workplace." West requested a hearing on the issue, pursuant to § 101.055(6)(a)3. DeCom deemed West's complaint out of its sphere of authority, no matter what facts she would have been able to show at a hearing, and thus denied her a hearing. West appealed DeCom's decision to the circuit court, which reversed and ordered DeCom to grant West a hearing. DeCom now appeals that decision.

Our review is of the agency's decision, not that of the circuit court. *See Langhus v. LIRC*, 206 Wis. 2d 494, 501, 557 N.W.2d 450, 454 (Ct. App. 1996). The interpretation of a statute is a question of law we review de novo. *See Board of Regents v. Wisconsin Personnel Comm'n*, 103 Wis. 2d 545, 551, 309 N.W.2d 366, 369 (Ct. App. 1981). Furthermore, the scope of an agency's jurisdiction is a question of law, and we are not bound by the agency's determination of such. *See id.* Nevertheless, we will at times defer to an agency's interpretation of a statute; the level of deference we afford depends on the agency's expertise in the area. *See Barron Elec. Coop. v. Public Serv. Comm'n*, 212 Wis. 2d 752, 760–64, 569 N.W.2d 726, 731–32 (Ct. App.) (reviewing levels of deference to agency decisions), *review denied,* 215 Wis. 2d 426, 576 N.W.2d 282 (1997). However, if the agency's decision is based on an erroneous view of the law, we grant it no deference. *See Lisney v. LIRC*, 171 Wis. 2d 499, 506, 493 N.W.2d 14, 16 (1992).

This case revolves around the interpretation of Wisconsin's public employee safety and health law (WisOSHA). WisOSHA affords government employees the same protection extended to private sector employees under OSHA. *See* § 101.055(1), STATS. There are two grounds for which DeCom must issue an enforcement order under WisOSHA: (1) violation of a standard or variance, and (2) "a condition which poses a recognized hazard likely to cause death or serious physical harm." Section 101.055(6)(a). The second route, the scope of which is at issue here, is referred to as the general duty clause. *See National Realty & Constr. Co. v. Occupational Safety & Health Review Comm'n*, 489 F.2d 1257, 1260–61 (D.C. Cir. 1973).

We note that DeCom's refusal to give West a hearing was based on an erroneous view of the statute. DeCom, in its letter to West, stated that it lacked jurisdiction over her complaint because there were no standards in place regarding firearms. Further, it wrote that "no amount of evidence can create jurisdiction to issue an enforcement order in the absence of duly promulgated standards." This view disregards that jurisdiction can arise through the existence of "a condition which poses a recognized hazard likely to cause death or serious physical harm to a public employe." Section 101.055(6)(a)1, STATS. West is correct that this decision reflects an erroneous view of the law. Nevertheless, we agree that West was not entitled to a hearing.[2]

---

[2] West argues that we are precluded from upholding the agency's decision on any grounds other than those cited by the agency. West relies on *Stas v. Milwaukee County Civil Service Commission*, 75 Wis. 2d 465, 473–74, 249 N.W.2d 764, 769 (1977), which quoted the following language from *Securities &*

While DeCom couched its denial to grant West a hearing in terms of jurisdiction, we see the real issue as whether the potential harm here—the possibility of being injured by the public while performing the work duties of an unarmed police officer—is the type of hazard meant to be addressed by WisOSHA.

DeCom contends that West is not entitled to a hearing because, as a matter of law, there is no set of facts she could prove that would bring her claim within the ambit of WisOSHA. According to DeCom, the threat of a violent encounter with a member of the

---

*Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196 (1947):

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action *solely by the grounds invoked by the agency.* If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. [Emphasis added.]

First, the interpretation of a statute is not "a determination or judgment which an administrative agency alone is authorized to make." *Stas*, 75 Wis. 2d at 474, 249 N.W.2d at 769 (quoting *Chenery*, 332 U.S. at 196). Rather, it is within the province of the court to define the scope of jurisdiction given to the agency under the statute. *See Board of Regents v. Wisconsin Personnel Comm'n*, 103 Wis. 2d 545, 551, 309 N.W.2d 366, 369 (Ct. App. 1981). Second, *Stas* dealt with agency conclusions based on a factually deficient record. *See Stas*, 75 Wis. 2d at 474–75, 249 N.W.2d at 768–69; *see also Koyo Seiko Co. v. United States,* 95 F.3d 1094, 1100–01 (Fed. Cir. 1996) (finding *Chenery* inapplicable in case where agency's decision was based on statutory construction). When, as here, the "facts are not in dispute and the only question is one of law, the court may substitute its judgment for that of the agency." *Racine Unified Sch. Dist. v. Thompson*, 107 Wis. 2d 657, 664, 321 N.W.2d 334, 338 (Ct. App. 1982).

public is not the type of hazard over which DeCom has jurisdiction, as it is not a physical condition of the workplace. In support of its argument, DeCom cites *Oil, Chemical & Atomic Workers International Union v. American Cyanamid Co.*, 741 F.2d 444 (D.C. Cir. 1984). There, the court held that OSHA did "not apply to a policy as contrasted with a physical condition of the workplace," and thus American Cyanamid's requirement that women of child-bearing age undergo sterilization was not a cognizable job hazard. *Id.* at 448. Rather, hazards meant to be addressed under the act were concrete, physical workplace conditions, "such as toxic chemicals or fumes . . . [or] . . . physical hazards." *Id.* (quoted source omitted). Furthermore, DeCom points out, the UWO police are under the control of the UWO chancellor. *See* § 36.11(2)(b), STATS. The chancellor's decision not to arm campus police is well within his discretion and not reviewable by DeCom.

West counters that WisOSHA, like OSHA, is a remedial statute that should be interpreted broadly in order to effect its purpose. The idea is to protect workers from job-related hazardous conditions. Neither WisOSHA nor OSHA defines the term "recognized hazard," but OSHA's legislative history shows that Congress intended the meaning of the term to evolve with changes in industry, technology and health care. *See* Wendy A. Cherner-Maneval, *Occupational Safety and Health—Employer Policy Excluding Fertile Women Workers Permitted Under OSHA*—Oil, Chemical & Atomic Workers International Union v. American Cyanamid, 741 F.2d 444 (D.C. Cir. 1984), 58 TEMP. L.Q. 939, 951–52 (1985). West's argument is as follows: The hazard to West is real and tangible; she runs the risk of physical harm at her job just as a construction worker

on a platform runs the risk of falling off. And just as an employer of a welder must furnish him or her with a safety helmet, so must the UWO allow West to carry a firearm. Furthermore, unlike the employer in *American Cyanamid*, who could not reduce the lead toxins any further, the chancellor does have control over this situation; he could easily render West's workplace less harmful by allowing her to carry a weapon. Finally, West points out that the vesting of control in the chancellor does not mean that he is free to flout WisOSHA any more than he could choose to pay university employees less than minimum wage. Once the chancellor has made the decision to require campus police to perform the full range of patrol activities, including apprehension of criminals, he has no choice but to properly equip them to carry out these tasks by permitting them to carry weapons.

Our review of OSHA case law leads us to agree with DeCom. Generally, OSHA cases construing the general duty clause have dealt with construction perils, chemical toxic waste and other industry hazards. For example, the following conditions have been identified as "recognized hazards": dumping of demolition debris through an unprotected chute, *see Usery v. Marquette Cement Manufacturing Co.*, 568 F.2d 902 (2d Cir. 1977); fire hazards created by use of titanium, *see Titanium Metals Corp. of America v. Usery*, 579 F.2d 536 (9th Cir. 1978); open elevator shafts, *see Otis Elevator Co. v. Occupational Safety & Health Review Commission*, 581 F.2d 1056 (2d Cir. 1978); exposure to airborne concentrations of lead, *see American Smelting & Refining Co. v. Occupational Safety & Health Review Commission*, 501 F.2d 504 (8th Cir. 1974). *See also* Ethel R. Alston, Annotation, *What Is "Recognized Hazard" Within Meaning of General Duty Clause of*

*Occupational Safety and Health Act (29 U.S.C.A. § 654(A)(1))*, 50 A.L.R. FED. 741 (1980). In each of these cases, a hearing was conducted to gather facts and determine the industry standard, if any, in order to decide whether a "recognized hazard" existed. These are the types of hazards held to be within OSHA's ambit. *American Cyanamid*, on the other hand, held a company's sterilization policy to be outside the scope of OSHA, even though the policy was precipitated by lead exposure. *See American Cyanamid*, 741 F.2d at 445. That case confirms that OSHA was only meant to address "tangible hazards such as chemicals." *See id.* at 449. As noted above, the court there concluded that "the language of the Act cannot be stretched so far as to hold that the sterilization option . . . is a 'hazard' of 'employment' under the general duty clause." *Id.* at 445.

West urges us not to be persuaded by *American Cyanamid*. First, West claims that "the reasoning of *American Cyanamid* has been brought into serious question." It is true that numerous law review articles criticize the decision for its effect on women in the work force. *See, e.g.,* Karin E. Wilinski, Note, *Involuntary Contraceptive Measures: Controlling Women at the Expense of Human Rights*, 10 B.U. INT'L L.J. 351 (1992). And West does cite one student comment criticizing *American Cyanamid*'s limitation of OSHA. *See* Richard Lewis, Comment, OCAW v. American Cyanamid: *The Shrinking of the Occupational Safety and Health Act*, 133 U. PA. L. REV. 1167 (1985). But we are more persuaded by the fact that, according to our research, not one case has questioned the result of *American Cyanamid*,[3] nor has Congress passed legislation to

---

[3] We do note, however, that the type of fetal-protection policy at issue in *Oil, Chemical & Atomic Workers International*

counteract its holding. Second, West distinguishes *American Cyanamid* on its facts. There, the presence of the underlying hazard could not, in any economically feasible way, be reduced to safe levels. *See American Cyanamid*, 741 F.2d at 445. The sterilization policy was implemented in response to this problem. *See id.* Here, there is an economically feasible way to reduce exposure to the alleged harm: arm the officers. But this distinction does not answer the question before us: Is the threat of on-the-job violence the type of hazard OSHA was meant to address? And it is in answering this question that we find *American Cyanamid* instructive. OSHA was meant to address tangible, measurable hazards in the workplace. The abstract threat West faces in her job, like the sterilization policy in *American Cyanamid*, is simply not the type of workplace issue Congress had in mind when it passed OSHA. Indeed, this case is further removed from OSHA than *American Cyanamid*. At least there the policy in question was prompted by a typical OSHA hazard—lead toxins. Here, West's complaint is in no way connected to a tangible hazard.

■

Because there exists no set of facts West could have proven at a hearing that would have brought her claim within the ambit of WisOSHA, DeCom correctly

*Union v. American Cyanamid Co.*, 741 F.2d 444 (D.C. Cir. 1984), was struck down as violative of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, *see* 42 U.S.C.A. § 2000e(k) (West 1994), in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Johnson Controls, Inc.*, 499 U.S. 187, 198–200 (1991). However, the case did not bring the fetal-protection policy within the ambit of OSHA.

denied the hearing, and we affirm that decision. We thus reverse the judgment of the circuit court.

*By the Court.*—Judgment reversed.