MILWAUKEE DISTRICT COUNCIL 48, American Federation of State, County and Municipal Employees, AFSCME, AFL-CIO and Frank Jurena, Jr., Plaintiffs-Respondents-Petitioners,

v.

MILWAUKEE COUNTY and Milwaukee County Pension Board, Defendants-Appellants.

Supreme Court

*No. 98–1126. Oral argument September 7, 2000.—Decided June 15, 2001.*

2001 WI 65

(Also reported in 627 N.W.2d 866.)

For the plaintiffs-respondents-petitioners there were briefs by *Alvin R. Ugent* and *Podell, Ugent, Haney & Miszewski, S.C.*, Milwaukee, and oral argument by *Alvin R. Ugent* and *Robert E. Haney*.

For the defendants-appellants there was a brief and oral argument by *Timothy R. Schoewe*, deputy corporation counsel.

An amicus curiae brief was filed by *Jeffrey P. Sweetland* and *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, Milwaukee, on behalf of the Wisconsin Federation of Nurses and Health Professionals, AFT, AFL-CIO.

An amicus curiae brief was filed by *Franklyn M. Gimbel, Aaron M. Hurvitz* and *Gimbel, Reilly, Guerin & Brown*, Milwaukee, on behalf of the Milwaukee Deputy Sheriff's Association.

An amicus curiae brief was filed by *Lucy T. Brown* on behalf of the Wisconsin Education Association Council, and oral argument by *Lucy T. Brown*.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals,[1] reversing an order of the Circuit Court for Milwaukee County, Charles F. Kahn, Jr., Judge. The case involves Milwaukee County's procedure for denying pension benefits to employees who have been discharged for "cause."

¶ 2. Under the Milwaukee County ordinances, a Milwaukee County employee has a property interest in a deferred vested pension after ten years of creditable service unless the employee is terminated for "fault or delinquency." This contingency—termination for "fault or delinquency"—nullifies the employee's pension eligibility, irrespective of the length of the employee's service.

¶ 3. The principal issue in this case relates to procedure: May Milwaukee County deny a pension to an employee who has ten years of creditable service after terminating the employee for "cause" (following a due process hearing), without also holding a due process hearing to determine whether the employee was terminated for "fault or delinquency"? A secondary issue is whether a labor organization may seek a declaratory judgment to obtain an answer to the first issue in these circumstances.

¶ 4. Because the record before this court is sparse, we proceed with some reluctance, limiting our holding to acknowledged facts. On this basis, we

---

[1] *Milwaukee Dist. Council 48 v. Milwaukee County*, No. 98–1126, unpublished slip op. (Wis. Ct. App. Oct. 5, 1999).

reverse the court of appeals and declare rights as set forth below.

¶ 5. We conclude that Milwaukee County may not deny a pension to an employee whose length of service with the county has satisfied the minimum requirement for a deferred vested pension without first affording the employee procedural due process, including a hearing to determine whether the employee is being or was terminated for "fault or delinquency," as provided in Milwaukee County Code of General Ordinances, County Employes' Retirement System § 201.24 (4.5) (1996).

## BACKGROUND

¶ 6. Milwaukee County employs thousands of people in different capacities for public service work. Milwaukee District Council 48, American Federation of State, County & Municipal Employees (District Council 48 or the union), is the exclusive bargaining agent for approximately 6,000 of these public employees.

¶ 7. Most county employees, including nurses, deputy sheriffs, and the members of District Council 48's bargaining unit are "members" of the Milwaukee County Employes' Retirement System (retirement system or the system), which is the only county-operated retirement system in Wisconsin. Milwaukee County has maintained a retirement system for its employees since 1937. The enabling legislation for the system is Chapter 201, Laws of 1937. This nonstatutory session law has been amended many times since its enactment by the legislature, and today, its provisions, as amended, together with the county ordinances supplementing it, are contained in Chapter 201 of the

Milwaukee County Code of General Ordinances, entitled "County Employes' Retirement System."

¶ 8. Milwaukee County's retirement system is a defined benefit plan. In *Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 559 n.3, 544 N.W.2d 888 (1996), the court discussed the county's system and this plan, and it explained the nature of a defined benefit plan:

> [A]n actuary projects the amount necessary to fund the future payment of benefits to retirees and then calculates a single appropriate sum to be contributed to the pension fund. Defined benefit schemes benefit "vested" employees only and vested employees must usually wait until retirement age to receive their benefits.

¶ 9. Chapter 201 of the county ordinances lays out the rules determining the size of an employee's pension and the date when the employee becomes eligible to receive the benefit. The chapter also establishes the rules on "vesting." A member who began work for the county after January 1, 1971, but before January 1, 1982, "shall not be eligible for a deferred vested pension if his employment is terminated prior to his completion of six (6) years of service." Milwaukee County Code of General Ordinances, County Employes' Retirement System § 201.24 (4.5) (¶ 2) (1996). A member who began employment on or after January 1, 1982, is not eligible "if his employment is terminated prior to his completion of ten (10) years of service." *Id.*

¶ 10. Most employees understand the concept of ten year vesting. Until they have ten years of creditable service, these employees have no right to any county pension. District Council 48 alleges, however, that many county employees do not understand that, even

after they have established ten years of creditable service, they may lose their pensions if they are terminated for "fault or delinquency."

¶ 11. The controlling provision on this point comes out of the 1937 session law[2] and now reads as follows:

A member shall be eligible for a deferred vested pension if his employment is terminated for any cause, *other than fault or delinquency on his part*, provided that he elects not to withdraw any part of his membership account and that his pension at age sixty (60) is at least ten dollars ($10.00) per month.

Milwaukee County Code of General Ordinances, County Employes' Retirement System § 201.24 (4.5) (¶ 1) (emphasis added).

¶ 12. The 1937 session law and the Milwaukee County Ordinance draw a distinction between "cause" and "fault or delinquency," the latter being a subset of the former.

¶ 13. The word "cause" also appears in Wis. Stat. § 63.10 (1997–98),[3] a section included in the chapter entitled "County and City Civil Service." Wisconsin Stat. § 63.10 details procedures for local governments to deal with employees who are allegedly incompetent to perform their duties or who otherwise merit demotion or dismissal. Wisconsin Stat. § 63.10(1) speaks of "cause" for discharge.[4] "At the termination of the hear-

___

[2] Chapter 201, Laws of 1937, § 6(b) refers to "a member who is removed or otherwise involuntarily separated from service for any cause other than fault or delinquency on his part."

[3] All references to the Wisconsin Statutes are to the 1997–98 volumes unless otherwise noted.

[4] Wisconsin Stat. § 59.52(8)(b) provides a "just cause" standard for law enforcement employees:

ing the [local personnel] commission shall determine whether or not the charge is well founded and shall take such action by way of suspension, demotion, discharge or reinstatement, as it may deem requisite and proper under the circumstances and as its rules may provide." Wis. Stat. § 63.10(2).

¶ 14. In Milwaukee County, a superior officer (supervisor), the director of human resources, or any citizen may file charges against a county employee seeking the employee's demotion or discharge. These charges must be based on "cause." The employee is given notice of the charges and a due process hearing before the Milwaukee County Personnel Review Board. Milwaukee County Code of General Ordinances, Civil Service Rules for Milwaukee County Government, Rule VII, §§ 2–4 (1997).

¶ 15. According to the rules, the complaint given to the employee "shall state specifically the facts alleged to constitute cause for. . .discharge, and shall refer to section 4 of this rule under which said charges are brought." Milwaukee County Code of General Ordinances, Civil Service Rules for Milwaukee County Government, Rule VII, § 3(2) (1997).

¶ 16. Section 4 is entitled "Cause for discharge, suspension or demotion and/or reevaluation." The section reads in part:

(1) The following are declared to be cause for discharge, suspension or demotion and/or the approval of or the imposition of an employe reevaluation

A law enforcement employee of the county may not be suspended, demoted, dismissed or suspended and demoted by the civil service commission or by the board, based either on its own investigation or on charges filed by the sheriff, unless the commission or board determines whether there is just cause, as described in this paragraph, to sustain the charges.

342

period as provided in rule VI. . .though charges may be based upon causes and complaints other than those here enumerated.

Milwaukee County Code of General Ordinances, Civil Service Rules for Milwaukee County Government, Rule VII, § 4 (1997).

¶ 17. The section then lists 46 specific grounds amounting to "cause" for discharge or demotion, including:

(a) Theft of private or county property.

. . . .

(m) Threatening, intimidating, coercing or harassing employes or supervision at any time.

(n) Making false or malicious statements, either oral or written, concerning any employe, the county or its policies.

(o) Unexcused, unauthorized, or excessive absence.

(p) Unexcused, unauthorized, or excessive tardiness.

. . . .

(t) Failure or inability to perform the duties of assigned position.

. . . .

(cc) Reporting to work or working while under the influence of intoxicating beverages and/or narcotics or other drugs or having unauthorized possession of same on county premises during working hours.

*Id.*

¶ 18. Among other enumerated grounds for discharge or demotion under Rule VII, § 4 are:

(c) Unauthorized use of county premises.

. . . .

(f) Distributing or posting handbills, pamphlets or other written or printed material in any work area without authorization.

(g) Posting, removing or tampering with county bulletin board material without authorization.

. . . .

(j) Littering, creating or contributing to unsanitary or unsafe conditions on county premises.

(k) Refusing or failing to obey orders of supervisor whether written or oral.

. . . .

(r) Leaving place of work during working hours without authorization, wasting time or loitering.

(s) Stopping work before designated quitting time.

. . . .

(jj) Engaging in horseplay or scuffling on county premises during working hours.

(kk) Engaging in personal activities during working hours.

. . . .

(rr) Removal of permanent residence to some place outside of Milwaukee County, except as specifically authorized by the commission or failure to establish permanent residence in Milwaukee County within the time limited by the commission.

*Id.*

¶ 19. When an employee is terminated for "cause," the employee is entitled to certiorari review in circuit court. *State ex rel. Iushewitz v. Pers. Review Bd.*,

344

176 Wis. 2d 706, 710, 500 N.W.2d 634 (1993) (citing *State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 549–50, 185 N.W.2d 306 (1971)).

## PROCEDURAL HISTORY

¶ 20. On December 6, 1994, District Council 48 sought a declaratory judgment, pursuant to Wis. Stat. § 806.04, against Milwaukee County and the Milwaukee County Pension Board. In its complaint, the union asserted that it had been certified by the Wisconsin Employment Relations Commission as the exclusive representative of more than 6,000 county employees with regard to their wages, hours, and working conditions, and that it was party to a contract with Milwaukee County, governing, among other things, fringe benefits (including pensions). District Council 48 stated that the collective bargaining agreement acknowledged that employees terminated with less than ten years of service were not entitled to a deferred vested pension. It claimed, however, that the county was wrongfully construing the pension ordinance and the labor agreement to mean that if an employee is terminated for "cause" after ten years of service, the employee is disqualified for a deferred vested pension.

¶ 21. The complaint states in part: "Within the past three years, several members of the Bargaining Unit represented by Plaintiff, have been terminated for an alleged 'just cause' after 10 years of service and have been denied pension benefits by said defendants."

¶ 22. District Council 48 also claimed that, normally, employees subject to discharge were given the opportunity to resign instead of having a hearing on their termination "and by so doing, [they] retain their vested pension benefits." However, "[t]hose employees who have exercised their right to a hearing and who

have subsequently been terminated by the Milwaukee County Personnel Review Board, were denied a deferred vested pension."

¶ 23. District Council 48 stated that it sought a declaratory judgment to have the court "determine the rights, status and other legal relations" of members of the bargaining unit with regard to their pension benefits.

¶ 24. The case was assigned to Milwaukee County Circuit Judge Laurence C. Gram, Jr. In May 1995, Judge Gram ordered a briefing schedule.

¶ 25. With its first brief, the union argued that the county could not deprive a vested employee of a pension after ten years of service, even though the employee had been terminated for "cause." It said that pension denial was inconsistent with vesting. In addition, the union claimed a breach of its collective bargaining agreement and a misconstruction of the pension ordinance. It contended that county employees had always been allowed to quit rather than wait to see if they would be terminated. According to the union's brief:

> If they do not quit, and instead wait for a hearing and a subsequent ruling, their pension benefits are lost if they are terminated by the Personnel Review Board.
>
> . . . .
>
> No one should be required to risk the loss of 27 years of pension benefits just to have a due process hearing on the question of just cause. Some long term employees rolled the dice and had the hearing only to find that they were terminated and they lost everything.

¶ 26. The union filed portions of deposition testimony by Jac R. Amerell, Executive Director of the Milwaukee County Retirement Plan, tending to support its claim that termination for "cause" led to forfeiture of an employee's pension.

¶ 27. In its answer, the county argued strenuously that District Council 48 lacked standing to bring a declaratory judgment action as "the union asserted no claim of right in its own behalf." The county also contended that the matter was not ripe for judicial determination. It also claimed that any rights to a deferred vested pension were "contingent upon leaving county service in good standing." The county said that the union had sought to change this practice through collective bargaining but had failed. The county asked the court to deny the request for declaratory relief and dismiss the case.

¶ 28. The county filed with its answer an affidavit from Henry H. Zielinski, director of labor relations for Milwaukee County. In his affidavit, Zielinski said: "There is a long standing practice of denying deferred pension benefits to employees who do not leave county service in good standing pursuant to the ordinance adopting the state law."

¶ 29. In its reply brief, the union responded to the claim that it lacked standing, saying that it had been a plaintiff in many court actions to enforce contract provisions for the benefit of its members. "The union has an interest to see to it that its members receive all of the benefits due to them." Claiming its action was ripe, the union argued that "certain Milwaukee County employees have been severely damaged and harmed and have lost substantial pension benefits pursuant to the wrong interpretation given to the pension laws by Milwaukee County and

the Pension Board." It submitted an affidavit naming two former county employees, Frank Jurena, Jr., and Ronald Pavelko, who were members of the bargaining unit before being terminated. Both men allegedly "lost all pension benefits." It also filed another affidavit naming a 27-year employee, John Kropp, allegedly in danger of being terminated and thereby losing his benefits.

¶ 30. In November 1995, Judge Gram dismissed the case on the merits, without explaining his reasoning on the record or in a written opinion. The union appealed, and in June 1996 the court of appeals reversed and remanded the cause with directions. The court of appeals reversed because the circuit court "failed to state any basis for its discretionary decision dismissing the union's complaint." *Dist. Council #48 v. Milwaukee County*, No. 95–3522–FT, unpublished slip op. (Wis. Ct. App. June 25, 1996).

¶ 31. On remand, the case was assigned to Judge Charles F. Kahn, Jr. The union filed an amended complaint in which Jurena was added as a named plaintiff. The union also modified its claims against the county, focusing on the lack of procedure provided by the county in terminating the pension benefits of a discharged employee, as opposed to the ultimate right of the county to deny pension benefits to a discharged employee.

¶ 32. In March 1998, Judge Kahn ruled in favor of the union and Jurena. In his written order, Judge Kahn declared "[t]hat the practice and procedure utilized by [the county] of denying pension benefits to longstanding employees terminated for cause is an unconstitutional denial of due process and denial of equal protection of the laws."

¶ 33. In October 1999, the court of appeals reversed the decision of Judge Kahn. *Milwaukee Dist. Council 48 v. Milwaukee County*, No. 98–1126, unpublished slip op. (Wis. Ct. App. Oct. 5, 1999). The court of appeals held that the union had failed to establish a due process violation. In addition, the court of appeals ruled that the union had waived any equal protection claim.[5] The union appealed and we granted review.

## DECLARATORY JUDGMENT

¶ 34. We must first address whether declaratory relief is appropriate in this case. The county contends that the union lacks standing because it has no claim of right in its own behalf. Furthermore, the case is not ripe because the factual record is inadequate. The county's brief states that "Frank Jurena has yet to be formally denied a pension;" and other allegations have not been established. As a result, the county reasons that any declaratory relief could not be conclusive upon the controversy submitted to the court, and a court has no business entangling itself in abstract disagreements.

¶ 35. The power of courts to issue a declaratory judgment is statutory. *Miller v. Currie*, 208 Wis. 199, 203, 242 N.W. 570 (1932). Wisconsin Stat. § 806.04 grants broad authority to a circuit court "to declare

---

[5] The union has failed to address that portion of the circuit court's ruling that declared the county's practices violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. As the court of appeals found, we also find that the union has waived any equal protection claim.

rights, status, and other legal relations whether or not further relief is or could be claimed."[6]

---

[6] Wisconsin Stat. § 806.04, the Uniform Declaratory Judgments Act, provides in pertinent part:

(1) SCOPE. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree, except that finality for purposes of filing an appeal as of right shall be determined in accordance with s. 808.03 (1).

. . . .

(2) POWER TO CONSTRUE, ETC. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder. No party shall be denied the right to have declared the validity of any statute or municipal ordinance by virtue of the fact that the party holds a license or permit under such statutes or ordinances.

(3) BEFORE BREACH. A contract may be construed either before or after there has been a breach thereof.

. . . .

(5) ENUMERATION NOT EXCLUSIVE. The enumeration in subs. (2), (3) and (4) does not limit or restrict the exercise of the general powers conferred in sub. (1) in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

(6) DISCRETIONARY. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

. . . .

(8) SUPPLEMENTAL RELIEF. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be

¶ 36. A decision to grant or deny declaratory relief falls within the discretion of the circuit court. *Loy v. Bunderson*, 107 Wis. 2d 400, 409, 320 N.W.2d 175 (1982). The circuit court's decision to grant declaratory relief will not be overturned unless the circuit court erroneously exercised its discretion. *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 423, 491 N.W.2d 484 (1992). This court will uphold a discretionary act if the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy*, 107 Wis. 2d at 414–15 (citing *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971)).

¶ 37. This court has adopted standards to evaluate the appropriateness of declaratory relief. A declaratory judgment is fitting when a controversy is justiciable. *Loy*, 107 Wis. 2d at 410. In determining justiciability, we employ the following test:

> There must exist a justiciable controversy—that is to say:

---

deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

. . . .

(11) PARTIES. When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding. . . .

(12) CONSTRUCTION. This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.

(1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.

(2) The controversy must be between persons whose interests are adverse.

(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

(4) The issue involved in the controversy must be ripe for judicial determination.

*Miller Brands-Milwaukee v. Case*, 162 Wis. 2d 684, 694, 470 N.W.2d 290 (1991) (citing *Loy*, 107 Wis. 2d at 410). "If all four factors are satisfied, the controversy is 'justiciable,' and it is proper for a court to entertain an action for declaratory judgment." *Id.*

¶ 38. We conclude that the circuit court did not erroneously exercise its discretion in issuing declaratory relief. Both the union and Frank Jurena have interests opposed to the county insofar as pension benefits are concerned. The union is the exclusive representative of approximately 6,000 county employees, many of whom have ten years of service. The union has a duty to represent its members in discharge proceedings and in contemporary proceedings affecting their pensions, but it may not have a duty to represent them many years in the future when, as former members, they apply for pensions. The union must give its members sound advice. It must represent them well. It must also hold down unnecessary legal costs. The union has a tangible interest in knowing what the law is and what rights its members have, so that it can do its duty.[7]

---

[7] There are two additional reasons to support our recognition of the union's standing in this case. First, Wisconsin Stat.

¶ 39. For his part, Frank Jurena wants a pension. Because he served as a county employee for approximately 16 years before he was terminated for "cause," he is vested in the sense that he completed enough years of creditable service to earn a pension—unless he was specifically terminated for "fault or delinquency." Jurena has a protectible property interest, and he asserts a right to make his claim in the proper forum.

¶ 40. On the facts of this case, both Jurena and the union have standing to seek a declaratory judgment.

▬

¶ 41. This suit is also ripe for judicial determination. By definition, the ripeness required in a declaratory judgment is different from the ripeness required in other actions. For example, in a declaratory action involving a forfeiture statute, "[p]otential defendants may seek a construction of a statute or a test of its constitutional validity without subjecting themselves to forfeitures or prosecution." *State ex rel. Lynch v. Conta*, 71 Wis. 2d 662, 674, 239 N.W.2d 313 (1976). Thus, a plaintiff seeking declaratory judgment need not actually suffer an injury before seeking relief under Wis. Stat. § 806.04(2). Nonetheless, a matter is not ripe unless the facts are sufficiently developed to allow a conclusive adjudication. *Id.*

¶ 42. The county argues that the matter is not ripe because it has not officially denied Jurena a pension. The county also maintains that the controversy is

§ 806.04 "is to be liberally construed and administered." Wis. Stat. § 806.04(12). Second, standing is generally a matter of judicial policy rather than a jurisdictional prerequisite. *Wis. Bankers Ass'n v. Mut. Sav. & Loan*, 96 Wis. 2d 438, 444 n.1, 291 N.W.2d 869 (1980).

not ripe because a pension cannot vest under its agreement with the employees before an employee has completed honorable service for the county (*i.e.*, no "fault or delinquency" during service). These arguments fail.

¶ 43. The controversy is ripe because the union seeks a declaration of law concerning the procedural due process available to an employee to contest termination of employment and loss of pension when the determination of one may lead automatically to the determination of the other. The due process at issue is the process afforded to test whether the county has presented the proper grounds and taken the necessary steps to deny a vested employee a pension. This is a prelude to the ultimate question of whether a so-called "vested" employee may be denied a pension.

¶ 44. An employee need not have been denied pension benefits to satisfy the ripeness required in this type of action. *See id.* at 674. The union seeks a declaration about the decision-making process in which an employee is discharged and then denied benefits. Following his discharge, Jurena wants to know his rights.

¶ 45. The union's standing and the ripeness of this controversy are very much related. The union does not stand wholly apart from its members. In theory, thousands of the union's vested members could have filed suit as individuals seeking a declaration of their due process rights in connection with the potential denial of their pensions. Instead, they took action collectively through the union. On these facts, the union's participation is a logical extension of its normal activities of representing employee members in regard to wages, hours, and working conditions. We see no reason why the union cannot bring a declaratory judgment action to gain "relief from uncertainty and insecurity

with respect to rights, status and other legal relations" of its members on such a broad and important legal issue. Wis. Stat. § 806.04(12).[8]

¶ 46. We note that the vast majority of individual employees will be in the same position as the union with regard to ripeness. Very few individuals are in a position to assert that their termination for "cause" is imminent and that their loss of pension is imminent. Waiting until both events actually occur would defeat the purpose of the declaratory judgment statute. In *Loy*, 107 Wis. 2d at 413, the court quotes from Borchard,

> Declaratory Judgments:
>
> Perhaps the principal contribution that the declaratory judgment has made to the philosophy of

---

[8] The United States Supreme Court has developed a three-part standing test for associational litigants, including unions, in litigation of federal issues. *UAW v. Brock*, 477 U.S. 274, 282 (1986). The test allows an association

> to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Brock*, 477 U.S. at 282 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). This test, however, limits the power of the federal judiciary, in part to comply with Article III, Section 2 of the United States Constitution. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996). We do not apply this test here but cite it as persuasive authority for the proposition we adopt on the facts of this case: "[I]n certain circumstances, particular relationships. . .are sufficient to rebut the background presumption. . .that litigants may not assert the rights of absent third parties." *Id.* at 557.

procedure is to make it clear that a controversy as to legal rights is as fully determinable before as it is after one or the other party has acted on his own view of his rights and perhaps irretrievably shattered the status quo.

Edwin Borchard, *Declaratory Judgments* 58 (2d ed. 1941).

██

¶ 47. Applying these principles, we think judicial economy and common sense dictate that the union is authorized to seek a declaration of rights.

## DUE PROCESS OF LAW

¶ 48. The Fourteenth Amendment to the United States Constitution protects life, liberty, and property from government impairment.[9] No state or political subdivision may deprive any person of life, liberty or property without due process of law. "An essential principle of due process is that a deprivation of. . .property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). This opportunity to be heard " 'must be at a meaningful time and in a meaningful manner.' " *Goldberg*, 397 U.S. at 267 (quoting *Armstrong v. Manzo*, 380 U.S. 545 (1965)).

---

[9] The Fourteenth Amendment to the United States Constitution provides in relevant part: "No State shall make or enforce any law which shall. . .deprive any person of life, liberty, or property, without due process of law."

¶ 49. The type of hearing required depends upon the nature of the case, *Armstrong*, 380 U.S. at 550, and the hearing "must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg*, 397 U.S. at 268–69. " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

¶ 50. The "property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972). "Property interests, of course, are not created by the [United States] Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577.

¶ 51. We have said that the Fourteenth Amendment protects the property interests of state employees, *Arneson v. Jezwinski*, 225 Wis. 2d 371, 393, 592 N.W.2d 606 (1999), and county employees, *Stas v. Milwaukee County Civil Service Commission*, 75 Wis. 2d 465, 470, 249 N.W.2d 764 (1977), in their employment. Due process in this context means that an employee subject to discharge is " 'entitled to the full panoply of due-process protections, the minimum requirements of which include a timely and adequate notice of the reasons for the discharge, an impartial decisionmaker, and the opportunity to confront and cross examine adverse witnesses.' " *Stas*, 75 Wis. 2d at 470–71 (quoting *State ex rel. DeLuca v. Common Coun-*

*cil of City of Franklin*, 72 Wis. 2d 672, 679, 242 N.W.2d 689 (1976)).

¶ 52. As noted above, Wis. Stat. § 63.10 also imposes procedural mandates, including a hearing requirement, when the county attempts to discharge an employee. Wis. Stat. § 63.10(1) and (2). There is no dispute that county employees who have passed their probationary period have a protectible property interest in their jobs because state law precludes their discharge without "cause."[10]

¶ 53. Milwaukee County employees also have a property interest in a pension after they have earned ten years of creditable service. *Ass'n of State Prosecutors*, 199 Wis. 2d at 552, 560. This property interest is distinct and different from their interest in employment. According to the county ordinance, the Milwaukee County Pension Board is not free to deny an employee a deferred vested pension once the employee has become eligible to receive it *unless* the employee has been terminated for "fault or delinquency."

¶ 54. Termination of an employee for "cause" is not enough to deprive the employee of a vested pension. Termination for "fault or delinquency" is the *statutory* prerequisite for denial of a vested pension.

¶ 55. Inasmuch as vested employees have a protectible property interest in their pensions, they may not be deprived of their pensions without due process of law. This requires notice and a hearing.

¶ 56. We have examined the ordinances and rules of Milwaukee County related to the matters at issue. The rules of the Milwaukee County Pension

---

[10] *See also* Wis. Stat. § 59.52(8)(b).

Board are quite specific. Rule 806, "Termination for fault or delinquency," provides:

> Pursuant to section 4.5 of the Retirement Act, a member forfeits his pension if he terminates employment with the county for fault or delinquency on his part. For purposes of section 4.5 of the Retirement Act, "fault or delinquency" shall be determined solely by the personnel review board of the county. The pension board shall rely on the determination of "fault or delinquency" made by the personnel review board and shall not independently or separately determine whether a member's termination resulted from fault or delinquency. The pension board shall rely on the determination made by the personnel review board of the county because it believes the personnel review board is operating appropriately. The pension board may periodically review the operation of the personnel review board to determine whether it continues to operate appropriately.

Milwaukee County Code of General Ordinances, Rules of the Employes' Retirement System, Rule 806 (1997).

¶ 57. Rule 806 assumes that the Milwaukee County Personnel Review Board will make a finding of "fault or delinquency." However, we have not discovered any county ordinance or rule explaining what "fault or delinquency" is, or how the Personnel Review Board should make its determination. It is not clear whether the board actually makes this determination.

¶ 58. Looking at Civil Service Rule VII, § 4, we find 46 enumerated grounds of "cause" to discharge a county employee. Milwaukee County Code of General Ordinances, Civil Service Rules for Milwaukee County Government, Rule VII, § 4 (1997). The rule does not clarify whether all 46 grounds, plus others that might

serve as the basis for discharge, constitute "fault or delinquency," or whether the Personnel Review Board draws consistent distinctions among the 46 grounds, or whether the board applies the various grounds differently in different cases. *Id.* If the Personnel Review Board were to regard all 46 grounds for discharge as "fault or delinquency," then it would be saying that a county employee could lose his or her vested pension for tampering with county bulletin board material, stopping work before designated quitting time, horseplay on county premises during working hours, and making malicious statements about county policies.

¶ 59. The record indicates, through the deposition testimony of Jac R. Amerell, that vested employees can be terminated for inability to perform the duties of their assigned position even though the inability stems from a non-work related disability. In these cases, they may still lose their pensions if they do not have 15 years of creditable service. "[M]ore often than not it's my belief that they lose their pension right" in this situation, he said. Is inability to perform duties because of a non-work related disability "fault or delinquency" as opposed to "cause"?

¶ 60. Amerell manages the county's pension system. In his deposition, he described a letter he had written to Ronald J. Pavelko, an employee discharged for "cause." Pavelko had requested a form so that he could apply for pension benefits. Amerell wrote back that the discharged employee was not "qualified" for a pension. Amerell admitted the reason Pavelko was denied pension application paperwork was that he had been discharged for "cause." Amerell did not testify that any additional consideration, namely "fault or delinquency," played a role in his decision to refuse pension paperwork to the discharged employee.

¶ 61. The record shows that Milwaukee County has failed to establish clear rules on "fault or delinquency." It has consistently failed to make individual assessments of whether employee discharges rise to the level of "fault or delinquency." It has failed to provide hearings at which employees may be heard on this issue at a meaningful time in a meaningful manner. It has failed to make evidentiary-based findings that are capable of being reviewed by certiorari in circuit court. In short, the county has failed to give due process consideration to the termination of pension rights based upon "fault or delinquency."

¶ 62. We conclude that Milwaukee County may not deny a pension to an employee who has satisfied the minimum requirements of creditable service for a deferred vested pension without first affording the employee the procedural due process of a hearing to determine whether the employee is being or was terminated for "fault or delinquency." The hearing must be preceded by fair notice.[11] The county must also establish standards for "fault or delinquency." The determination of "fault or delinquency" must provide an evidentiary record capable of review by certiorari in circuit court.[12]

¶ 63. We are not holding or implying that the county must hold a completely separate due process hearing for the denial of a pension. The requirements of procedural due process are flexible enough, *Mathews*, 424 U.S. at 334, that the county may offer a hearing that considers *both* "cause" for discharge and

---

[11] *Waste Mgmt. of Wis., Inc. v. Wis. Dep't of Natural Resources*, 128 Wis. 2d 59, 78, 381 N.W.2d 318 (1986) (citing *Mullane v. Cent. Hanover Tr. Co.*, 339 U.S. 306, 313 (1950)).

[12] *State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 651–52, 275 N.W.2d 668 (1979).

"fault or delinquency." We do find, however, that the county must provide a hearing of some type that considers the impact of the discharge on pension benefits. The county must allow the discharged employee to tell "his [or her] side of the story." *Cleveland Bd. of Educ.*, 470 U.S. at 546.

¶ 64. Our holding today is confined to procedural rights. We are neither asked nor required to define the exact interest that a county employee has in a pension after the employee has worked the minimum number of years to qualify for a pension. We find merely that such an employee has a property interest in his or her pension that requires due process before the county can declare the employee ineligible for the pension as a result of discharge.

¶ 65. We decline to rule on whether the 1937 session law and the ordinance place unreasonable pressure on employees to give up their rights for a due process hearing on employment termination to preserve their eligibility for a future pension. This question was insufficiently briefed and argued to this court to require a response.

CONCLUSION

¶ 66. The record is sparse but sufficient to permit a declaration that Milwaukee County may not deny a pension to an employee who meets the minimum requirements of creditable service for a deferred vested pension without first affording the employee procedural due process, including a hearing to determine whether the employee is being or was terminated for "fault or delinquency." Accordingly, we reverse the decision of the court of appeals and remand the cause to

the circuit court for entry of a declaratory order consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.