Thor C. MIKULA and West Bend
Mutual Insurance Company,
Plaintiffs,

v.

MILLER BREWING COMPANY,
Defendant-Third-Party Plaintiff-Appellant,

ACUITY, A Mutual Insurance Company,
Defendant-Respondent,†

v.

J.F. COOK, INC.,
Third-Party Defendant-Respondent,†

UNITRIN PREFERRED INSURANCE COMPANY,
Third-Party Defendant,

MILWAUKEE MUTUAL INSURANCE COMPANY,
Third-Party Defendant-Respondent.

Court of Appeals

*No. 2004AP498. Submitted on briefs January 4, 2005.
—Decided April 12, 2005.*

2005 WI App 92

(Also reported in 701 N.W.2d 613.)

† Petition for review denied 9-8-05.

712

713

On behalf of the defendant-third-party plaintiff-appellant, the cause was submitted on the briefs of *Jeffrey O. Davis* and *Patrick S. Nolan* of *Quarles & Brady, LLP*, of Milwaukee.

On behalf of the defendant-respondent Acuity, the cause was submitted on the brief of *Arthur P. Simpson* of *Simpson & Deardorff, S.C.*, of Milwaukee.

On behalf of the respondents J.F. Cook Co., Inc. and Milwaukee Mutual Insurance Company, the cause was submitted on the brief of *Susan R. Tyndall* of *CMT Legal Group, Ltd.*, of Waukesha.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Miller Brewing Company appeals from the trial court's grant of summary judgment, holding that Miller has no coverage under the insurance policy issued by Acuity, a mutual insurance company, to Selzer-Ornst Company, a general contractor hired by Miller, to which Miller was added as an "additional insured." Miller also appeals from the trial court's grant of declaratory judgment holding that neither J.F. Cook & Company, Inc., a subcontractor hired by Selzer-Ornst, nor its insurer, Milwaukee Mutual Insurance Company, is obligated to defend or indemnify Miller, also added as an "additional insured" to the Milwaukee Mutual policy, for the claims alleged in Thor C. Mikula's complaint against Miller, or any judgment resulting therefrom.

¶ 2. Miller contends that: (1) Acuity's additional insured endorsement covers Miller for liability arising out of Selzer-Ornst's ongoing operations; (2) the Mikula

717

complaint triggered Milwaukee Mutual's defense obligations to Miller under its additional insured endorsement in two different ways; and (3) J.F. Cook is contractually obligated to defend and indemnify Miller for the Mikula claim. Because we conclude that Miller is covered as an additional insured under both policies, and J.F. Cook has a duty to indemnify Miller for the Mikula claim, we reverse.

## I. BACKGROUND.

¶ 3. Miller contracted with Selzer-Ornst, a general contractor, for the installation of new windows and the performance of other improvements at Miller's Milwaukee brewery facility. As a condition of the construction contract, Selzer-Ornst was to have Miller added as an "additional insured" on its general liability insurance policy, which was issued by Acuity. It did so, and provided Miller with a Certificate of Insurance listing Miller as an additional insured on the policy. The policy provides, in.relevant part, as follows:

> Who Is an Insured is amended to include as an insured any person or organization for whom you [Selzer-Ornst] are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization [Miller] is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

¶ 4. Selzer-Ornst subcontracted with J.F. Cook to replace the windows at the brewery. They similarly added Miller, pursuant to a contract, as an additional

insured on their policy. J.F. Cook's Milwaukee Mutual policy provides, in relevant part, as follows:

> Each of the following is also an insured:
>
> > **a.** Any person or organization you [J.F. Cook] are required by a written contract, agreement, or permit to name as an insured, but only with respect to liability arising out of:
> >
> > > **1.** "your ongoing operations" performed for that insured at the location designated in the contract, agreement, or permit; or
> > >
> > > **2.** premises owned or used by you.

J.F. Cook's contract with Selzer-Ornst also included the following indemnity clause:

> The Sub-Contractor [J.F. Cook] shall indemnify and save harmless the Owner [Miller], the Architect, the Contractor [Selzer-Ornst] and their respective agents from any and all liability, payments and expenses of any nature for injury or death to any person, or persons, or for damage to any property, caused ~~or alleged to have been caused~~ by the Sub-Contractor, or incidental to the execution of work under this contract by the Sub-Contractor, his agents or employees; and the Sub-Contractor shall maintain from the beginning until the completion of his work policies of insurance satisfactory to the Contractor, covering the liabilities above mentioned, such as employers' liability insurance, public insurance, contingent insurance, etc.

(Strikethrough in original.)

¶ 5. On December 17, 2002, Mikula, an employee of J.F. Cook, was injured "while carrying out his job duties to replace industrial windows at [the] Miller [brewery,]" when the doors of a cargo elevator slammed together and crushed his left hand. On May 6, 2003, Mikula filed a complaint against Miller and ABC Insur-

ance Companies[1] alleging that Miller was negligent in failing to maintain the condition of its premises, to warn frequenters that a hazardous condition existed, and to take precautions or make provisions to protect against the hazard. The complaint also alleged that Miller violated Wisconsin's safe place statute, WIS. STAT. § 101.11, in that Miller failed to provide for the safety of the premises; the "premises were not as safe as its nature reasonably permitted" because of a condition for which Miller was responsible; and Miller had complete control over the premises, with actual or constructive knowledge of their "unsafe nature." Mikula alleged that this negligence and carelessness in maintaining the property were the direct and proximate causes of his injury.

¶ 6. Miller tendered its defense to Acuity, seeking coverage as an additional insured under Selzer-Ornst's general liability policy. Acuity agreed to defend Miller, and also retained separate counsel to challenge coverage. Acuity moved for summary judgment, "seeking a ruling that it does not provide free liability insurance coverage to Miller . . . when an employee of a subcontractor[,] J.F. Cook[,] is injured by a negligent condition

[1] Mikula used the "ABC Insurance Companies" moniker to designate, pursuant to WIS. STAT. § 807.12 (2003–04), the unknown insurance companies that issued policies to Miller for claims such as those set forth in his complaint.

Moreover, West Bend Mutual Insurance Company was also a plaintiff in the case, insofar as they paid worker's compensation benefits for the injuries sustained that are the subject of this lawsuit. For simplicity, as neither Mikula nor West Bend are parties to this appeal, we will refer to the plaintiffs as "Mikula" only.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

720

left by an additional insured (Miller) absent any negligence of the general contractor (the insured, Selzer-Ornst)." Acuity also filed a counterclaim against Mikula and a cross claim against Miller "on the basis that Miller is **not** an additional insured on Selzer-Ornst's CGL policy." (Emphasis in original.) Thus, Acuity sought the "dismissal of all claims against it on the grounds that it does not provide coverage for Miller."

¶ 7. Before Acuity's motion for summary judgment was decided, Miller filed a third party complaint against Milwaukee Mutual and J.F. Cook.[2] First, Miller claimed that, based on the indemnity language in the subcontract between J.F. Cook and Selzer-Ornst, J.F. Cook has a contractual obligation to indemnify and hold Miller harmless for Mikula's injuries arising out of his work on Miller's premises. Second, Miller claimed that, pursuant to the insurance policy issued to J.F. Cook, Milwaukee Mutual must defend and indemnify Miller as an additional insured for the claims asserted by Mikula.

¶ 8. Shortly thereafter, the trial court granted Acuity's motion for summary judgment, concluding that the Acuity policy provides no coverage for Miller, and dismissing all claims against Acuity with prejudice. The trial court reasoned:

> The injuries to the Plaintiff are not attributable to any negligence arising out of Selzer-Ornst's replacement of windows or other work at the Miller Brewing facility. The Plaintiff was injured by an elevator door at Miller's facility. Under this circumstance, Miller is not entitled

---

[2] It appears that Miller mistakenly named Unitrin Preferred Insurance Company, instead of Milwaukee Mutual, as J.F. Cook's insurer in this matter, but it was presumably corrected at some point later in the proceedings.

to coverage under the additional . . . insured clause of the CGL policy issued to Selzer-Ornst. Miller has argued that it expected it would be protected from personal injury claims that arose out of the work it contracted for with Selzer-Ornst. However, the injury to the Plaintiff did not arise out of Selzer-Ornst's on-going operations performed for Miller. It did not arise out of something Selzer-Ornst did or did not do or one of its subcontractors did or did not do. Rather, something happened . . . with the elevator door at the Miller Brewing facility. For some reason the elevator door allegedly was not properly functioning. Selzer-Ornst had no control or responsibility for the maintenance of the elevator door. It is not reasonable to expect coverage when the injury was because of a malfunctioning elevator door on the property of the Miller facility, the additional insured. The complaint does not allege that Selzer-Ornst somehow created the hazard. The Court cannot find that there was a reasonable expectation of coverage under the facts presented in this case.

¶ 9. A couple of months later, J.F. Cook and Milwaukee Mutual filed a motion for declaratory judgment. In the motion, they argued that Miller is not an additional insured with regard to Mikula's allegations: "Mikula's injuries were not caused by his work or J.F. Cook's operations at the Miller Brewing site, but rather by a condition of the Miller Brewing premises. The fact that Mikula's work happened to be sited at Miller Park [sic] was not causally connected to the injury, or to Miller's maintenance of its premises[.]" Thus, they sought a declaration from the court indicating that Milwaukee Mutual has no obligation to defend or to indemnify Miller.

¶ 10. They also argued that J.F. Cook's indemnity agreement does not require it to defend Miller. They insisted that the indemnity agreement requires J.F.

Cook to indemnify Miller and Selzer-Ornst for liability arising out of J.F. Cook's "actual fault" and for matters " 'incidental to the execution of . . .' its work at Miller Brewing[,]" and that neither applies here. They also asserted that since the indemnity agreement "does not specifically or unequivocally express any intent that J.F. Cook indemnify Miller for its own negligence[,]" Miller's claim for indemnity should be denied for that reason alone.

¶ 11. The trial court granted J.F. Cook and Milwaukee Mutual's motion for declaratory judgment, concluding:

It is not alleged that plaintiff's injuries resulted from any negligence by J.F. Cook. Plaintiff's injuries are not attributable to any negligence arising out of J.F. Cook's ongoing operations performed for Miller. The Plaintiff was injured by an elevator door at Miller's facility.

. . . .

This Court has reviewed the cases cited by each party in support of its interpretation of this policy clause under this fact situation, and I am persuaded by the cases cited by J.F. Cook that hold that there must be some causal connection to the injury before there will be coverage under the provision. Such an interpretation would appear to focus on the risk for which coverage had been afforded. . . .

Within the four corners of the complaint, liability is alleged to have arisen solely by Miller's negligence, not J.F. Cook's. The injuries to plaintiff occurred while he was performing duties for J.F. Cook, but did not arise out of the operation of J.F. Cook.

Regarding the indemnification issue, I understand that the subcontract contained several provision[s] regarding Miller's defense and indemnity[.] . . .

 . . . .

. . . It is clear from case law that J[.]F. Cook could contract to indemnify Miller for its own negligence. However, in order to do so, there must be [a] clear and unequivocal statement to that effect in the agreement. . . . In the present contract there is no such clear and unequivocal statement of intent. J.F. Cook has no duty to indemnify Miller for injury alleged from its own negligence.

Miller now appeals.

## II. Analysis.

¶ 12. In an appeal from the entry of summary judgment, this court reviews the record *de novo,* applying the same standard and following the same methodology required of the trial court under Wis. Stat. 802.08. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). That methodology is well known, and need not be repeated here. *See* § 802.08; *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

¶ 13. "A decision to grant or deny declaratory relief falls within the discretion of the circuit court." *Milwaukee Dist. Council 48 v. Milwaukee County,* 2001 WI 65, 36, 244 Wis. 2d 333, 627 N.W.2d 866. "However, when the exercise of such discretion turns upon a question of law, we review the question *de novo,* benefiting from the trial courts analysis." *Gulmire v. St.*

*Paul Fire Marine Ins. Co.*, 2004 WI App 18, 10, 269 Wis. 2d 501, 674 N.W.2d 629 (emphasis added).

¶ 14. Indeed, the construction or interpretation of an insurance policy presents a question of law to which we apply *de novo* review. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 636, 586 N.W.2d 863 (1998). The same rules of construction that govern general contracts are applied to the language in insurance policies. "Judicial interpretation of a contract, including an insurance policy, seeks to determine and give effect to the intent of the contracting parties." *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, 23, 268 Wis. 2d 16, 673 N.W.2d 65. As such, insurance policies "are construed as they would be understood by a reasonable person in the position of the insured." *Id.*

¶ 15. "The words of an insurance policy are to be given their common and ordinary meaning." *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. When the language of the policy is plain and unambiguous, it is enforced as written, without resorting to rules of construction or principles in case law. *Hull*, 222 Wis. 2d at 637. "Contract language is considered ambiguous if it is susceptible to more than one reasonable interpretation[, and i]f the language is ambiguous, it is construed in favor of coverage." *Danbeck*, 245 Wis. 2d 186, ¶ 10 (citation omitted).

A. *Miller is covered by the additional insured endorsement of the Acuity policy.*

¶ 16. Miller contends that the additional insured endorsement extends liability coverage to Miller with-

725

out regard to "fault." It argues that the phrase "arising out of" is generally considered to be "broad, general and comprehensive," and requires only "some causal relationship" between the injury and the risk for which coverage is provided. "Ongoing operations," on the other hand, has not been defined by Wisconsin case law, but Miller argues that its common dictionary definition is appropriate—"ongoing" means "being actually in process" or "continuing," and "operations" refer to "the act, process, or method of operating" or "a process of actions that is part of a series in some work." (Citations in brief omitted.) Thus, Miller contends that the question becomes "whether Miller's liability for Mikula's claim arises out of Selzer-Ornst's ongoing operations."

¶ 17. As such, Miller insists that "[f]or purposes of Acuity's endorsement language, Mikula's injury 'grows out of' and 'flows from' the window replacement project Selzer-Ornst did for Miller, during which it hired J.F. Cook." J.F. Cook's work, and specifically Mikula's activities, Miller argues, was integral to Selzer-Ornst's work for Miller. Therefore, Miller contends that the additional insured endorsement covers Mikula's claim against Miller.

¶ 18. Miller goes on to argue that, at a minimum, the policy is reasonably susceptible to Miller's interpretation, and even if Acuity presents an equally plausible interpretation, the policy would be ambiguous and should be construed in favor of coverage. Furthermore, as there is no Wisconsin law on point, Miller contends that the overwhelming majority of courts from other jurisdictions have found coverage under additional insured provisions without regard to fault.

¶ 19. Acuity argues that the legal issue is: "absent (a) any negligence or (b) even a presence by Selzer-Ornst at the area of the accident, whether 'liability

726

arising our of your [Selzer-Ornst's] ongoing operations performed for that [additional] insured' exists when an employee (Mikula) of a subcontractor (J.F. Cook) is injured by a negligent condition left by Miller." Acuity contends that it does not. It argues that "Selzer-Ornst's . . . 'ongoing operations' were not being performed when J.F. Cook's . . . employee was walking through Miller's facility[,]" and absent any negligence on Selzer-Ornst's behalf, the additional insured endorsement does not apply.

¶ 20. Acuity argues that several cases from other jurisdictions have concluded that the purpose of an additional insured endorsement is to protect the additional insured from being liable for the negligence of the named insured. It essentially asserts that the "connection" between the injury and Selzer-Ornst's "ongoing operations" is too tenuous, that adopting "but for" causation is unreasonable, and that no reasonable person would expect coverage under these circumstances. Moreover, Acuity contends that "Miller should not be allowed to escape responsibility for a condition Miller solely created and controlled. Miller should not be allowed to pass off its responsibility to innocent contractors who have no ability to control every negligent condition Miller fails to maintain on its premises." Acuity insists that it is not objectively reasonable to expect the policy to provide coverage for "anything and everything" that happened on Miller's premises. We disagree with Acuity's underlying premise. The question here is whether Miller is covered as an additional insured under Selzer-Ornst's policy for claims resulting from a J.F. Cook employee's injury that occurred while the employee was performing the work J.F. Cook was

hired by Selzer-Ornst to do in furtherance of its contract with Miller. We conclude that it is.

■■■■

¶ 21. The phrase "arising out of" has been construed broadly—"commonly understood to mean originating from, growing out of, or flowing from, and require[s] only that there be some causal relationship between the injury and the risk for which coverage is provided[,]" *Lawver v. Boling*, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976) (footnote omitted)—but "ongoing operations" is not defined by the policy and has not been defined by Wisconsin case law. As words in a policy should be given their common, everyday meaning, *Paape v. Northern Assurance Co. of America*, 142 Wis. 2d 45, 51, 416 N.W.2d 665 (Ct. App. 1987), "[r]esort to a recognized dictionary may be had in order to discern the plain meaning[,]" *Holsum Foods Division of Harvest States Cooperatives v. Home Insurance Co.*, 162 Wis. 2d 563, 569, 469 N.W.2d 918 (Ct. App. 1991). "Ongoing operations," then, can be understood to mean the "doing or performing of a practical work or of something involving practical application of principles or processes . . . as a part of a series of actions," WEBSTER'S THIRD NEW WORLD DICTIONARY 1581 (1993), "that is actually in process," *id.* at 1576, or that is "making progress," *id.* In other words, Selzer-Ornst's "ongoing operations" could reasonably be interpreted to refer to the ongoing performance of the work that Selzer-Ornst undertook to complete for Miller, pursuant to their contract—that is, the ongoing process of work performed for the additional insured. However, it is the interpretation of the entire relevant provision with which we are concerned.

¶ 22. With these definitions in mind, a common sense reading of the relevant language in the additional

insured endorsement—"[s]uch person or organization [Miller] is an additional insured only with respect to liability arising out of your [Selzer-Ornst's] ongoing operations performed for that insured"—indicates that Miller is an additional insured with regard to Mikula's claims. That is, Selzer-Ornst hired J.F. Cook to perform certain tasks as part of the ongoing operations Selzer-Ornst was performing for Miller. It was alleged in the complaint and, in fact, it was stipulated, that Mikula, a J.F. Cook employee, was in the course of his work when injured. Thus, Miller's liability "arose out" of Selzer-Ornst's ongoing operations. Nothing in the language of the policy indicates that Miller's coverage as an additional insured with respect to "liability arising out of [Selzer-Ornst's] ongoing operations" is limited solely to the liability Miller might be exposed to as a result of Selzer-Ornst's negligence. The language is very broad.

¶ 23. Acuity argues that the connection between Mikula's injuries and Selzer-Ornst's ongoing operations is too tenuous, citing *Pro Con Construction, Inc. v. Acadia Insurance Co.*, 794 A.2d 108 (N.H. 2002). In that case, Oracle Corporation hired Pro Con to manage the construction of a facility. Pro Con hired several subcontractors, including Decorative Concepts (DC), for the project. DC carried a general liability policy that included an additional insured endorsement with language identical to that in dispute here. A DC employee fell on an icy sidewalk while walking from his work area to a coffee truck, and brought suit against Pro Con. Pro Con sought coverage as an additional insured under DC's policy. The Supreme Court of New Hampshire rejected Pro Con's argument that "the policy language can be reasonably interpreted to include all claims that would not have arisen 'but for' the employee's presence on the general contractor's premises[,]" *id.* at 473,

concluding that that interpretation was inconsistent with its longstanding interpretation of the phrase "arising out of," which requires more than a tenuous causal connection. *Id.* The court concluded that the injuries did not occur while the employee was engaged in any task related to DC's ongoing operations, and as such, the requisite causal connection did not exist. *Id.* Here, however, Mikula was injured while in the course of his work—he was allegedly using the cargo elevator to haul materials—for J.F. Cook, which was, as discussed above, part of Selzer-Ornst's ongoing operations. The cases are distinguishable.[3]

¶ 24. We have also reviewed the other cases cited by Acuity from foreign jurisdictions concluding that the purpose of an additional insured endorsement is to protect the additional insured from the negligence of the named insured, not its own. *See, e.g., Davis v. LTV Steel Co.*, 716 N.E.2d 766, 769 (Ohio Ct. App. 1998) (stating that "[t]he phrase 'arising out of your operations' in the endorsement was intended to protect the [additional insured] from any liability for the negligence of [the named insured's] employees who would be performing the industrial cleaning at the [additional insured's] plant. In other words, the purpose of the additional-insured endorsement was to protect the additional insured . . . from being vicariously liable for the tortious acts of the named insured . . . .") (citation omitted); *G.E. Tignall & Co. v. Reliance Nat'l Ins. Co.*, 102 F. Supp. 2d 300, 306 (D. Md. 2000) (determining that the "policy limiting additional insured coverage to li-

---

[3] Moreover, the Supreme Court of New Hampshire court did not refer to the general contractor's own alleged negligence as a basis for concluding that it was not covered as an additional insured with regard to claims of the injured employee.

ability arising out of the named insured's work does not cover [the additional insured] for its own negligent acts").[4]

¶ 25. However, it appears that the majority of cases conclude otherwise. While the language found in all of these policies may not be verbatim—they may use the words "your work" instead of "your ongoing operations," for example—those differences are fairly immaterial to the overall question at hand. On the point of contention, whether coverage is intended and should be provided when there is no negligence alleged on behalf of the named insured, the cases reach the same conclusion—there need not be negligence alleged against the named insured for the additional insured to be covered.

¶ 26. In *Marathon Ashland Pipe Line LLC v. Maryland Casualty Co.*, 243 F.3d 1232, 1237 (10th Cir. 2001), for example, the policy at issue contained language identical to that in question here—"liability arising out of your ongoing operations performed for that insured." The United States Court of Appeals for the Tenth Circuit held that the additional insured endorsement provided coverage for the additional insured's

---

[4] Interestingly, *G.E. Tignall & Co. v. Reliance National Insurance Co.*, 102 F. Supp. 2d 300, 306 (D. Md. 2000), cited *Baltimore Gas & Electric Co. v. Commercial Union Insurance Co.*, 688 A.2d 496 (Md. Ct. Spec. App. 1997), in support of its conclusion. However, in *Baltimore Gas & Electric*, the policy also included an exclusion indicating "[t]his insurance does not apply to: . . . '[b]odily injury' or 'property damage' arising out of any act or omission of the additional insured(s) or any of their employees, other than the general supervision of work performed for the additional insured(s) by you." 688 A.2d at 504–05. The policy in *G.E. Tignall* did not include such an exclusion. Nor does Acuity's policy.

liability arising out of its own negligence. *Id.* at 1240 (citing *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251 (10th Cir. 1993)). It also noted that "[t]his appears to be the majority rule." *Id.*; *see also Acceptance Ins. Co. v. Syufy Enters.*, 81 Cal. Rptr. 2d 557, 561–62 (Cal. Ct. App. 1999); *see, e.g., Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 499 (5th Cir. 2000) (rejecting insurance company's argument that identical policy language limited endorsement's coverage to liability resulting from named insured's negligence and excludes liability arising out of the independent negligence of the additional insured); *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725, 730–31 (Tex. App. 1999) (interpreting similar language—"liability arising out of . . . '[y]our work' for that additional insured by or for you"—and rejecting insurance company's argument that "the liability must stem *directly* from [named insured's] negligence and cannot extend to negligence caused solely by [additional insured]"); *Syufy Enters.*, 81 Cal. Rptr. 2d at 561 (interpreting similar language —"liability arising out of 'your work' for that insured" —concluding "[t]he fact that the defect [that caused the injury] was attributable to [the additional insured's] negligence is irrelevant, since the policy language does not purport to allocate coverage according to fault").

¶ 27. If the Acuity policy intended to exclude coverage for liability arising from the additional insured's own negligence, it should and could have spelled out as much. *See Swift Energy*, 206 F.3d at 499 ("Mid-Continent could have expressly stated in the Policy that liability not resulting from [the named insured's] sole negligence was not covered by the additional insured endorsement. It did not do so."); *Syufy Enters.*, 81 Cal. Rptr. 2d at 562 ("Insurance companies are free to, and commonly have, issued additional

732

insured endorsements that specifically limit coverage to situations in which the additional insured is faced with vicarious liability for negligent conduct by the named insured."). Other policies have. *See, e.g., Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 688 A.2d 496, 504–05 (Md. Ct. Spec. App. 1997).

¶ 28. Moreover, we observe, without deciding, that should the endorsement cover only the additional insured's vicarious liability for the tortious acts of the named insured, one could argue that that coverage would be essentially illusory. That is, should the additional insured be held vicariously liable, it would presumably have an action for indemnity against the tortfeasor regardless of whether it was "covered" as an additional insured, thus rendering the additional insurance coverage essentially illusory. *See, e.g., Marathon Ashland Pipe Line*, 243 F.3d at 1240 n.5 (noting that the court was rejecting the "argument that the intent of an additional insured endorsement is to 'provide protection where the named insured, performing a job for the additional insured, blunders' "). The court went on to explain:

> Where the additional insured is held no more than vicariously liable for the acts of the named insured, the additional insured would have an action for indemnity against the primary wrongdoer. 'Thus, an endorsement that provides coverage only for the additional insured's vicarious liability may be illusory and provide no coverage at all.' In this light, it is obvious that additional insureds expect more from an endorsement clause than mere protection from vicarious liability.

*Id.* (citation omitted).

¶ 29. Thus, regardless of how other jurisdictions have interpreted policy language identical or similar to that of Acuity's policy, though the majority of the cases

tend to support our analysis, the essential inquiry boils down to what the reasonable entity in the position of the insured understands the language to mean. The reasonable interpretation of this broad language indicates that the additional insured is covered for liability flowing from the named insured's ongoing process of work performed for the additional insured. Here, it would be reasonable for the additional insured to expect coverage for Mikula's injury arising out of Selzer-Ornst's ongoing operations for Miller Brewing pursuant to its contract.

*B. Miller is covered by the additional insured endorsement of the Milwaukee Mutual policy.*

¶ 30. The Milwaukee Mutual policy, to which Miller was added as an additional insured, utilizes almost identical language as that of the Acuity policy: "liability arising out of . . . 'your [J.F. Cook's] ongoing operations' performed for that insured [Miller] at the location designated in the contract, agreement, or permit[.]" We are satisfied that the interpretation of this language leads to the same result as the Acuity policy language. J.F. Cook, Mikula's employer, was a subcontractor of Selzer-Ornst performing work for Miller at the Miller Brewery facility. Mikula was injured in the course of his work for J.F. Cook. Miller's liability, therefore, arose of out of J.F. Cook's ongoing operations.

¶ 31. Milwaukee Mutual and J.F. Cook similarly argue, however, that there is no causal relationship between J.F. Cook's operations and Mikula's injury. They insist that "Mikula's injuries were not caused by his work or J.F. Cook's operations at the Miller Brewing site, but rather by a condition of the Miller Brewing premises." However, as Milwaukee Mutual and J.F.

Cook acknowledge, proximate cause is not necessary here. What is required is "some causal relationship between the injury and the risk for which coverage is provided." *See Lawver*, 71 Wis. 2d at 415 (footnote omitted). As discussed above, there is a causal relationship between the injury and J.F. Cook's ongoing operations—Mikula was injured at the brewery in the course of his work for J.F. Cook. Miller's liability thus arose from J.F. Cook's ongoing operations.

¶ 32. Because we conclude that Miller is covered as an additional insured under this prong of the endorsement, we need not address the second prong, which covers the additional insured for "liability arising out of premises owned or used by you [J.F. Cook]."

*C. J.F. Cook has a duty to indemnify Miller.*

¶ 33. As noted, J.F. Cook's subcontract with Selzer-Ornst also included the following indemnity provision:

> The Sub-Contractor [J.F. Cook] shall indemnify and save harmless the Owner [Miller], the Architect, the Contractor [Selzer-Ornst] and their respective agents from *any and all liability,* payments and expenses of any nature for injury or death to any person, or persons, or for damage to any property, caused ~~or alleged to have been caused~~ by the Sub-Contractor, or *incidental to the execution of work under this contract by the Sub-Contractor,* his agents or employees; and the Sub-Contractor shall maintain from the beginning until the completion of his work policies of insurance satisfactory to the Contractor, covering the liabilities above mentioned, such as employers' liability insurance, public insurance, contingent insurance, etc.

(Emphasis added; strikethrough in original.) On the

basis of this language, Miller asserts that J.F. Cook is contractually obligated to defend and indemnify Miller for the Mikula claim. Miller argues that although the general rule is that indemnity agreements are to be strictly construed, one exception to that general rule applies here, yielding the result that J.F. Cook shall indemnify Miller for its own alleged negligence.

¶ 34. "Generally, contracts providing for indemnification in the case of the indemnitee's negligence are considered valid and not contrary to public policy." *Herchelroth v. Mahar*, 36 Wis. 2d 140, 145, 153 N.W.2d 6 (1967). Yet, "[t]he general rule accepted in this state and elsewhere is that an indemnification agreement will not be construed to cover an indemnitee for his own negligent acts absent a specific and express statement in the agreement to that effect." *Spivey v. Great Atl. & Pac. Tea Co.*, 79 Wis. 2d 58, 63, 255 N.W.2d 469 (1977). That is, indemnity agreements will be liberally construed when dealing with liability based on the negligence of the indemnitor, but " 'strictly construed when the indemnitee seeks to be indemnified for his own negligence.' " *Id.* (citation omitted).

¶ 35. There are exceptions, however, to this general rule. One such exception provides that absent clear and unequivocal language indicating as much, "if it is clear that the purpose and unmistakable intent of the parties in entering into the contract was for no other reason than to cover losses occasioned by the indemnitee's own negligence, indemnification may be afforded." *Id.* at 63–64; *see also Herchelroth*, 36 Wis. 2d at 146–47. In *Hastreiter v. Karau Buildings, Inc.*, 57 Wis. 2d 746, 205 N.W.2d 162 (1973), the supreme court, citing *Herchelroth*, concluded that even in the absence

of clear and unequivocal language, the agreement to purchase liability insurance in addition to the provision holding the indemnitee harmless from any liability evidenced the clear intent of the parties—that the contract intended to provide for the indemnification of the indemnitee from the effects of his own negligence. *Hastreiter*, 57 Wis. 2d at 748–49. It held that "[t]o construe the indemnification provision [otherwise] would be to make the hold harmless clause surplusage." *Id.* at 749.

¶ 36. Similarly, here, when the two provisions are taken together, J.F. Cook's agreement to purchase additional insurance and to

> indemnify and save harmless the Owner [Miller] ... from any and all liability, payments and expenses of any nature for injury or death to any person, or persons, or for damage to any property, caused by the Sub-Contractor, or incidental to the execution of work under this contract by the Sub-Contractor, his agents or employees[,]

evidences J.F. Cook's intent to indemnify and hold Miller harmless even though Miller may be negligent. An agreement to purchase insurance indicates an intention to affect the burden of covering the cost of liability that may arise, and considered in combination with an agreement to "indemnify and save harmless" a party from "any and all liability" for injury or death or "for damage to any property" "caused by the Subcontractor" or "incidental to the execution of work," evidences a clear intent to indemnify the party for all liability, including that resulting from the indemnitee's own alleged negligence. The contract evinces no other purpose for the inclusion of both agreements. Thus, as

Mikula's injury was, at the very least, "incident to the execution of work," J.F. Cook must indemnify Miller. Accordingly, we reverse.

*By the Court.*—Judgments reversed.