COURT OF APPEALS
DECISION
DATED AND FILED

March 11, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1152**

Cir. Ct. No. 2017CV121

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

COLUMBUS SCHOOL DISTRICT,

    PLAINTIFF,

  V.

COOPERATIVE EDUCATIONAL SERVICE AGENCY 10,

    DEFENDANT-THIRD-PARTY
    PLAINTIFF-APPELLANT,

  V.

NORTH AMERICAN MECHANICAL INC.,

    THIRD-PARTY DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Columbia County: TROY D. CROSS, Judge. *Affirmed and cause remanded for further proceedings*.

Before Fitzpatrick, PJ, Kloppenburg, and Nashold, JJ.

¶1 KLOPPENBURG, J. The Columbus School District sued Cooperative Educational Service Agency 10 (CESA 10) regarding alleged problems with the installation of new heating, ventilation, and air-conditioning (HVAC) systems at two schools. CESA 10 sought indemnification from North American Mechanical, Inc. (NAMI), a CESA 10 subcontractor. The circuit court granted NAMI's motion for summary judgment seeking dismissal of all claims against it because CESA 10 failed to present any evidence that NAMI "did anything wrong" and, therefore, NAMI could not as a matter of law be liable for indemnification under the terms of the contract between CESA 10 and NAMI. CESA 10 appeals.

¶2 We conclude, based on the language of the pertinent provision (the Indemnification Provision) in the contract between CESA 10 and NAMI, that NAMI's duty to indemnify CESA 10 applies only to claims for damages that were caused by NAMI, and that NAMI is entitled to summary judgment dismissing CESA 10's claims against it because CESA 10 points to no evidence that creates an issue of fact as to whether NAMI caused any damages giving rise to the District's claims against CESA 10. Accordingly, we affirm, and we remand to the circuit court for further proceedings on NAMI's motion for attorney's fees and costs.

## BACKGROUND

¶3 The District hired CESA 10, a general contractor, to perform HVAC projects at two District schools. In addition to contracting for the performance of the work, the parties entered into a "guaranteed energy savings agreement" that promised certain minimum levels of energy cost savings for the District. CESA 10 in turn contracted with a number of subcontractors for different aspects of the

projects. Pertinent here, CESA 10 contracted with one subcontractor to design the HVAC system at the high school and with subcontractor NAMI to provide materials for and install that HVAC system.

¶4     After discovering mold and high humidity in the schools, the District sued CESA 10 regarding alleged problems with the new HVAC systems and the District's failure to realize promised energy cost savings. CESA 10 filed a third-party complaint bringing claims against subcontractors, including claims for indemnification against NAMI.

¶5     After the parties had engaged in substantial discovery, NAMI moved for summary judgment seeking dismissal of CESA 10's claims against it. NAMI argued that it was entitled to summary judgment because, under the Indemnification Provision in its contract with CESA 10, NAMI's duty to indemnify CESA 10 was limited to damages caused by NAMI's conduct, and CESA 10 failed to adduce any evidence that NAMI's conduct caused any damages.

¶6     At the summary judgment hearing, the circuit court heard argument from the parties, including from the District's attorney, who explained that the District's experts did not "fault" NAMI and "offer[ed] no opinion critical of NAMI… and [the District's] lay people are happy and satisfied with NAMI." The court also reviewed opinions offered by CESA 10's experts concluding that there was no wrongdoing by any subcontractor at the high school. The court determined that NAMI was entitled to summary judgment dismissing CESA 10's claims against NAMI because there was no dispute of material fact as to whether NAMI "did anything wrong," as required by the Indemnification Provision. Specifically, the court explained that there was no assertion by any expert that NAMI "did

anything negligent" and there was no evidence that NAMI "did anything wrong in the acquisition of the [HVAC] equipment or in its installation."

¶7      NAMI subsequently filed a motion, which remains pending, seeking attorney's fees and costs pursuant to a fee-shifting provision in the contract between CESA10 and NAMI.

¶8      CESA 10 appeals.

## DISCUSSION

¶9      We first summarize the applicable standard of review and general legal principles.  We next interpret the Indemnification Provision, conclude that it is triggered only insofar as NAMI caused the damages giving rise to the District's claims against CESA 10, and address and reject CESA 10's arguments to the contrary.  Finally, we apply our interpretation of the Indemnification Provision to the record and conclude that NAMI is entitled to summary judgment dismissing CESA 10's claims against it.

### I.  Standard of Review

¶10     We review a grant of summary judgment de novo.  *Brey v. State Farm Mut. Auto. Ins. Co.*, 2020 WI App 45, ¶12, 393 Wis. 2d 574, 947 N.W.2d 205.  Summary judgment is proper, and the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

4

judgment as a matter of law." WIS. STAT. § 802.08(2) (2017-18);[1] *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶34, 309 Wis. 2d 365, 749 N.W.2d 211.

¶11    Interpretation of a written contract presents a question of law that we also review de novo. *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶14, 342 Wis. 2d 29, 816 N.W.2d 853; *Admanco, Inc. v. 700 Stanton Drive, LLC*, 2010 WI 76, ¶15, 326 Wis. 2d 586, 786 N.W.2d 759.    In interpreting contracts, "our goal 'is to ascertain the true intentions of the parties as expressed by the contractual language.'" *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (quoted source omitted). "[T]he best indication of the parties' intent is the language of the contract itself." *Id.* We presume the parties' intentions are expressed in the language of the contract. *Kriefall*, 342 Wis. 2d 29, ¶21. "'Interpretation of an indemnification agreement, like any other written contract, begins with the language of the agreement.'" *Fabco Equip., Inc. v. Kreilkamp Trucking, Inc.*, 2013 WI App 141, ¶6, 352 Wis. 2d 106, 841 N.W.2d 542 (quoted source omitted).

## II. Interpretation of the Indemnification Provision

¶12    As we explain, we conclude that the Indemnification Provision requires NAMI to indemnify CESA 10 only to the extent that NAMI's conduct caused the damages giving rise to the District's claims against CESA 10.

### A. *The Causation Requirement in the Indemnification Provision*

¶13    The Indemnification Provision reads as follows:

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

> To the fullest extent permitted by law, [NAMI] shall indemnify and hold harmless [CESA 10]… from all claims for bodily injury and property damage that may arise from the performance of the Subcontract Work, including reasonable attorneys' fees, costs and expenses, to the extent caused by the acts or omissions of [NAMI], [NAMI's] subcontractors or anyone employed directly or indirectly by any of them or by anyone for whose acts any of them may be liable.

¶14    Consistent with the legal principles stated above, we begin with the language of the Indemnification Provision. *Fabco Equip., Inc*, 352 Wis. 2d 106, ¶6.    The Provision sets three prerequisites for NAMI to indemnify CESA 10. First, the Provision requires that there be claims against CESA 10 for damages ("[NAMI] shall indemnify and hold harmless [CESA 10] ... from all claims for bodily injury and property damage").    Second, the Provision requires that the damages claimed arise from NAMI's work ("that may arise from the performance of [NAMI's] work").    Third, the Provision requires that the damages claimed be caused by NAMI or someone under its control ("to the extent *caused* by the acts or omissions of [NAMI], [NAMI's] subcontractors or anyone employed directly or indirectly by any of them or by anyone for whose acts any of them may be liable" (emphasis added)).    This last "causation clause" imposes a causation requirement that limits the scope of the Indemnification Provision as a whole, by unambiguously stating that NAMI's duty to indemnify CESA 10 for claims for damages (and associated attorney fees and legal costs) is triggered only insofar as NAMI's conduct (or the conduct of someone under NAMI's control) caused the damages giving rise to the claims.

¶15    As NAMI notes, the causation clause in the Indemnification Provision stands in stark contrast to a separate, narrower provision in the contract that imposes on NAMI a duty to "indemnify, defend, and hold harmless" CESA 10 against any claims brought by NAMI's own employees or subcontractors.    The

difference in language between the two provisions shows that the parties knew how to draft an agreement for indemnification that is not conditioned on causation, and that they chose not do so with respect to the Indemnification Provision.

¶16    In apparent disregard of the causation clause, CESA 10 argues that it need not prove that NAMI caused the District's damages. CESA 10 argues that, instead, NAMI's duty to indemnify is triggered solely by a claim of wrongdoing by NAMI, which CESA 10 argues creates "potential liability" for CESA 10. CESA 10 frames all of its grounds for the argument that it need not prove that NAMI caused the District's damages within the concept of NAMI's "potential liability" as an apparent surrogate for its own "potential liability." As we explain, the case law on potential liability as a trigger for indemnification does not absolve CESA 10 of the duty, under the language of the Indemnification Provision, to show that NAMI caused CESA 10's potential liability to the District. In the next section, we address the various grounds CESA 10 offers for its potential liability argument and explain why none of them have merit.

*B. CESA 10's Potential Liability Argument*

¶17    We first describe the concept of potential liability in the context of an indemnification provision as explained by Wisconsin case law. We then address in turn each ground CESA 10 offers for its potential liability argument.

*1. Potential Liability—Wisconsin Case Law.*

¶18    The rule of "potential liability" in Wisconsin case law is that an indemnitee who reaches a good-faith settlement with the original plaintiff based on the indemnitee's potential liability may then base an indemnification claim on that settlement. "Potential liability will defeat the conclusion that a payment was

voluntary," as is required to support an indemnification claim by the party making the payment. *Kriefall*, 342 Wis. 2d 29, ¶42. *See also*, *Barrons v. J. H. Findorff & Sons, Inc.*, 89 Wis. 2d 444, 455–56, 278 N.W.2d 827 (1979) ("an indemnitee that had given the indemnitor the choice of approving the settlement or taking over the defense of the action need only show potential, rather than actual, liability to the plaintiff and that the settlement was reasonable") (discussing and adopting rule from *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir. 1973)); *Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶47, 259 Wis. 2d 587, 657 N.W.2d 411 (when facing claim for indemnification based on settlement, "indemnitor is entitled to produce evidence that the settlement was unreasonable, including evidence that the indemnitee faced no potential liability or that the settling parties were involved in fraud or collusion.").

¶19      Whether the indemnification claim is successful depends on the language of the applicable indemnification provision. Wisconsin courts have endorsed the indemnitee's potential liability to the original plaintiff as a trigger for indemnification, provided that the underlying circumstances regarding the damages giving rise to the claims are clearly covered by the indemnification agreement. For example, in *Barrons*, our supreme court considered the application to a settlement of an indemnification agreement that included a requirement that damages be caused by the indemnitor or someone under the indemnitor's control. *Barrons*, 89 Wis. 2d 444, 451, 455-56. The indemnification claim came before the court on stipulated facts and the indemnitor's subcontractor's negligence was established as fact before settlement. *Id.* at 448, 455-56. Because the circumstances underlying the lawsuit were clearly embraced by the language of the indemnification agreement, the indemnitee needed only to show its "potential liability" to the plaintiff in order to maintain its indemnification

8

claim against the indemnitor. *Id.* Similarly, in *Mikula v. Miller Brewing Co.*, 2005 WI App 92, 281 Wis. 2d 712, 701 N.W.2d 613, this court considered an indemnification agreement that required the subcontractor to indemnify the owner for any damages "incidental to the execution of work." *Id.*, ¶¶1, 36. Because we determined that the circumstances underlying the lawsuit were "incidental to the execution of work" and thus fell within the scope of the indemnification agreement, we allowed the owner to maintain its claim for indemnification against the indemnitor subcontractor before the owner's liability had been settled or adjudicated. *Id.*, ¶36.

¶20 In sum, where an indemnitee's settlement with the original plaintiff is based on the indemnitee's potential liability, the settlement is involuntary. The indemnitee's involuntary payment will trigger a claim for indemnification if the circumstances giving rise to the original suit are unambiguously covered by the language of the indemnification agreement. As we have concluded above, the Indemnification Provision here covers only claims against CESA 10 for damages that NAMI caused.

### 2. CESA 10's Potential Liability Argument Based on *Kriefall*.

¶21 The only Wisconsin law CESA 10 cites for its proposition that NAMI's duty to indemnify is triggered solely by CESA 10's potential liability is *Kriefall*, 342 Wis. 2d 29, ¶59. CESA 10 relies on the following statements in *Kriefall*: "When discussing an alleged breach of the *duty to defend* under an indemnification agreement, we have noted that an indemnitor's duty to defend does not depend on the merits of the claim asserted. Instead, the duty to defend arises when potential liability is asserted against the indemnitee." *Id.*, ¶59

(emphasis added) (internal citations omitted). A more thorough examination of *Kriefall* shows why CESA 10's reliance on this language is inapposite.

¶22 *Kriefall* concerned, in pertinent part, a situation in which the indemnitor "repeatedly refused to accept" the indemnitee's tenders of defense. *Id.*, ¶48-49. As the court explained, the indemnification agreement at issue in that case "explicitly state[d] that [the indemnitor] promised *to defend* [the indemnitee] 'from all actions, suits, claims and proceedings.'" *Id.*, ¶60 (emphasis added). The contractual language in that case contained "no stated limit on [the indemnitor's] duty to defend." *Id.*, ¶58. "Accordingly, regardless of [the indemnitee's] ultimate liability, [the indemnitor] was obligated to honor its duty to defend …." *Id.*, ¶60. Because *Kriefall* concerned a duty to defend on which the contract imposed "no stated limit," *id.*, ¶58, whereas the Indemnification Provision here concerns a duty to indemnify that is expressly limited by a causation requirement regarding the indemnitor's conduct, the case does not support CESA 10's argument that NAMI must indemnify CESA 10 merely based on CESA 10's potential liability for the damages claimed by the District.

*3. CESA 10's Potential Liability Argument Based on Non-Wisconsin Case Law*

¶23 CESA 10 cites case law from other jurisdictions for the premise that "the duty to indemnify mirrors the duty to defend in that it turns upon allegations and potential liability, rather than proof of actual liability." These cases are not binding on this court. *State v. Muckerheide*, 2007 WI 5, ¶7, 298 Wis. 2d 553, 725 N.W.2d 930 ("Although a Wisconsin court may consider case law from such other jurisdictions, obviously such case law is not binding precedent in Wisconsin, and a Wisconsin court is not required to follow it."). However, for the sake of completeness, we distinguish the cases cited by CESA 10 because examining the

underlying contract language in each case helps to explain why CESA 10's "potential liability" argument fails.

¶24    Each case CESA 10 cites, like Wisconsin case law, uses "potential liability" to refer to the indemnitee's potential liability to the original plaintiff, not to the indemnitor's potential liability. *See **Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.***, 853 So. 2d 1072, 1079-80 (Fla. Dist. Ct. App. 2003) ("a party seeking indemnification must establish that the settlement was made based on his [or her] potential liability to the plaintiff ... because the indemnitee must not be a mere volunteer who has settled the underlying claim when there was no exposure to legal liability that obligated him or her to do so."); ***Pennant Serv. Co., Inc. v. True Oil Co.***, ***LLC***, 249 P.3d 698, 702, 707 (Wyo. 2011) (same); ***Federal Ins. Co. v. Binney & Smith, Inc.***, 913 N.E.2d 43, 48-49 (Ill. Ct. App. 2009) (in order to receive indemnification of settlement from insurer, an insured must show that he or she faced potential liability in the underlying action); ***Premcor Refin. Grp., Inc. v. Matrix Serv. Indus. Contractors, Inc.***, No. CV 07C-01-095 ALR, unpublished slip op. at 3, 6 (Del. Super. Ct. Nov. 18, 2013) (same); ***Gaspard v. Offshore Crane & Equip., Inc.***, No. CIV. A. 94-261, 1998 WL 388597, at 9 (E.D. La. July 8, 1998) ("indemnitee will only be required to show potential liability to the original plaintiff in order to support his claim over against the indemnitor." (unpublished opinion) (citation omitted)); ***McNamara v. Benchmark Ins. Co.***, 261 So. 3d 213, 221 (Ala. 2017) (in pursuing indemnification after settlement with plaintiff, indemnitee "does not have to show its actual liability to the original plaintiff .... '[T]he indemnitor is bound by any good faith reasonable settlement, and the indemnitee need only show potential liability.'" (quoted source omitted)).

¶25    Furthermore, the cases on which CESA 10 seeks to rely show that, also like Wisconsin, other jurisdictions condition potential liability as a trigger for

indemnification on a determination that the circumstances giving rise to the settlement were covered by the parties' indemnification agreement. *See, e.g.*, *Gaspard*, 1998 WL 388597, at 1, 10 (owner of oil supply vessel required to indemnify oil company in settlement for accident where "the accident did come within the scope of the indemnification agreement"); *Federal Ins. Co*, 913 N.E.2d at 53-55 (insurer required to indemnify manufacturer for settlement where contract required indemnification "even if any of the allegations of the suit against the insured are groundless, false or fraudulent."); *Premcor Refin. Grp., Inc.*, 2013 WL 6113606, at 4, 6 (insurer required to indemnify oil refiner in wrongful death settlement where indemnification agreement required insurer to indemnify refiner for deaths "aris[ing] out of [refiner's] work or operations" and facts established that deaths "arose out of [refiner's] work."); *Pennant Serv. Co., Inc.*, 249 P.3d at 707 (contractor required to indemnify oil well operator where facts established that employee was burned due to contractor's negligence and indemnification agreement required contractor to indemnify operator for settlements or judgments arising out of contractor's acts or omissions).

¶26     In sum, the case law on which CESA 10 seeks to rely shows that, like Wisconsin, other jurisdictions endorse the indemnitee's potential liability to the original plaintiff as a trigger for indemnification provided that the underlying circumstances giving rise to the claims against the indemnitee are covered by the indemnification agreement.  As stated, that means here that the circumstances giving rise to CESA 10's potential liability—the damages claimed by the District—must have been caused at least in part by NAMI.  Nothing in Wisconsin law or in the authority cited from other jurisdictions supports the proposition that to obtain indemnification the indemnitee need only show that it is potentially liable for *any* claim against it without a determination of whether the claim is

covered by the indemnification agreement. Nor do any of the cited cases suggest that potential liability on the part of the indemnitor, rather than the indemnitee, triggers a duty to indemnify independent of the language of the indemnification agreement.

*4. CESA 10's Potential Liability Argument Based on "Reasonable Attorney's Fees, Costs and Expenses."*

¶27    In its appellant's brief, CESA 10 concedes that the Indemnification Provision does not "explicitly articulate" NAMI's duty "to defend claims arising out of [NAMI's] work," which appears to imply a concession that the Indemnification Provision requires evidence that NAMI caused the damages claimed, consistent with our interpretation above. Nevertheless, CESA 10 argues that the language permitting CESA 10 to recover "reasonable attorney's fees, costs and expenses" "evidences the parties' intent for NAMI to be responsible for costs and expenses arising from claims about its work" absent any such evidence of causation. In its reply brief, CESA 10 reiterates its argument that the attorney's fees language mandates that NAMI must "indemnify CESA 10 for non-meritorious claims, as well as those with merit." CESA 10's reliance on the attorney's fees language fails because it disregards the causation clause, which unambiguously applies to attorney's fees as well as to damages.

¶28    The causation requirement in the Indemnification Provision makes it unreasonable to read the Provision as requiring that NAMI pay for CESA 10's legal costs regardless of the claim's merits. Specifically, it would not make sense for the provision to require that NAMI pay damages only to the extent caused by NAMI but pay legal fees regardless of merit or causation. CESA 10's argument that NAMI must pay for attorney's fees and legal costs for claims "about its work" requires that we read the Indemnification Provision to reference only damages

from "claims that arise" from NAMI's work, and ignore the qualifying causation clause. Parties can certainly contract for indemnification without a causation requirement. *See, e.g.*, ***Dykstra v. Arthur G. McKee & Co.***, 92 Wis. 2d 17, 38, 284 N.W.2d 692 (Ct. App. 1979), aff'd, 100 Wis. 2d 120 (subcontractor's obligation to indemnify even where injury was caused solely by general contractor's active negligence unless subcontractor was "diligently trying to minimize" possibility of damages placed "a heavy burden on the subcontractor, but it is a burden for which it bargained."); ***Mikula***, 281 Wis. 2d 712, ¶36 (contract required the subcontractor to indemnify owner for any damages "incidental to the execution of work"). However, the contract here unambiguously includes a causation requirement, and we "avoid interpreting contracts to make portions superfluous." ***Tufail v. Midwest Hosp., LLC***, 2013 WI 62, ¶81, 348 Wis. 2d 631, 833 N.W.2d 586. We will not excise the causation requirement, a burden for which CESA 10 bargained, from the contract.

### 5. CESA 10's Potential Liability Argument Based on "Act or Omission."

¶29 CESA 10 argues that NAMI's performance of the HVAC work is the "act or omission" that "caused" the District's claims, and that nothing in the contract requires any act or omission by NAMI to have been due to negligence or wrongdoing. This argument fails because it misreads and misapplies the Indemnification Provision, which, as explained above, separately requires that the claims "arise from" NAMI's work, that the claims be for damages, and that the damages claimed be "caused by" NAMI's work. Here, the District's claims did not arise from the mere fact that the HVAC work was completed, but rather from damages due to allegedly *negligent* performance of the HVAC work. Thus, the Indemnification Provision requires that NAMI caused the damages claimed based

on allegations of negligent performance, meaning that NAMI itself performed negligently.

### 6. *CESA 10's Potential Liability Argument Based on "May Be" and "To the Fullest Extent Permitted by Law."*

¶30 CESA 10 argues that the words "may be" in the clause "for whose acts any of them may be liable" "cannot be construed as anything other than a reference to potential liability, rather than actual liability." It makes the same argument with respect to the clause "to the fullest extent permitted by law," arguing that this clause shows that the Indemnification Provision "is intended—as the [clause] suggests—to incorporate the most extensive indemnification allowed under applicable law," which, according to CESA 10, must include "potential liability." This argument ignores the language in the Provision that explicitly limits the duty to indemnify to claims for damages "caused by" NAMI or someone under NAMI's control. CESA 10's argument is yet another attempt to excise the causation requirement from the Indemnification Provision and therefore does not persuade. *See Town Bank*, 330 Wis. 2d 340, ¶33 ("our goal 'is to ascertain the true intentions of the parties as expressed by the contractual language.'") (quoted source omitted).

¶31 In sum, none of CESA 10's grounds for its potential liability argument disturb our conclusion that, based on the language of the Indemnification Provision, the circumstances giving rise to CESA 10's potential liability—negligent performance resulting in claimed damages—must have been caused at least in part by NAMI. We now apply the language of the Indemnification Provision to NAMI's motion for summary judgment seeking dismissal of CESA 10's indemnification claims against it.

### III. Summary Judgment

¶32 The District's claims against CESA 10 alleged damages from mold contamination, high humidity, and failure to achieve promised energy savings costs. Under the language of the Indemnification Provision, some "act or omission" by NAMI must have caused these problems in order for NAMI's duty to indemnify CESA 10 to be triggered. Therefore, in order to defeat NAMI's motion for summary judgment seeking dismissal of CESA 10's claims for indemnification, CESA 10 must adduce evidence that at least creates a dispute of material fact as to whether NAMI caused the mold, high humidity, and high energy costs giving rise to the District's claims. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶¶70, 112, 326 Wis. 2d 300, 786 N.W.2d 15 (interpreting lease contract where lessee was responsible for damages "caused by the acts of the Lessee" and stating that "[c]ausation is normally a fact question"); *see also* WIS. STAT. § 802.08(3) (party opposing summary judgment is obliged to "set forth specific facts showing that there is a genuine issue for trial").

¶33 CESA 10 does not point to any witness who identifies any act or omission by NAMI as the cause of the District's claimed damages. CESA 10 does not cite any of the exhibits, affidavits, expert reports, or depositions produced in the previous three years of litigation to show that there is a genuine issue of fact as to whether NAMI caused the claimed damages. We conclude that NAMI is entitled to summary judgment dismissing all of CESA 10's claims because CESA 10 presents no facts at all that establish a dispute of fact as to whether NAMI caused the damages claimed by the District.

¶34 We now summarize CESA 10's arguments to the contrary and explain why we reject them.

16

¶35    First, CESA 10 argues that summary judgment is improper because the School District's complaint and its mediation statement mention installation of the HVAC system, and NAMI performed the installation. The record citations do not provide factual or legal support for CESA 10's arguments.

¶36    Factually, both of the cited references are general references to installation and do not specify that NAMI made installation errors that caused the District's problems with mold or humidity.

¶37    Legally, CESA 10's reliance on the complaint and post-summary judgment mediation is inapt. CESA 10's reliance on the complaint fails because, at the summary judgment stage, a party "may not rest upon mere allegations." WIS. STAT. § 802.08 (3). A party "may not rely on allegations in the complaint to oppose a defendant's summary judgment motion, because the complaint is not evidentiary." *Tews v. NHI, LLC*, 2010 WI 137, ¶82, 330 Wis. 2d 389, 793 N.W.2d 860 (citation omitted). CESA 10's reliance on the District's mediation statement fails because the mediation record is not part of the summary judgment record. Because the mediation occurred after the circuit court considered NAMI's summary judgment motion, our review of the summary judgment decision does not include review of the mediation records. As we have explained, "[O]nly the summary judgment submissions are relevant to the question whether the court properly [decided] summary judgment." *H & R Block E. Enterprises, Inc. v. Swenson*, 2008 WI App 3, ¶27 n.9, 307 Wis. 2d 390, 745 N.W.2d 421. Thus, material in mediation that was presented after the summary judgment decision was issued is not pertinent to our review.

¶38    Third, CESA 10 argues that affirming the circuit court's grant of summary judgment would penalize CESA 10 for maintaining its innocence of

liability and that of its subcontractors. CESA 10 argues that, for public policy reasons, a defendant should not have to prove the case against itself as part of its burden of proof in its indemnification case. We reject this argument because its premise is faulty. For CESA 10's indemnification claim to survive summary judgment, it need only show that the circumstances giving rise to the District's claimed damages fall within the scope of the Indemnity Provision, not that the School District's claims of negligence are true. *See*, **Mikula,** 281 Wis. 2d 712, ¶36 (reversing declaratory judgment in favor of indemnitor where fact circumstances underlying claim fell within scope of indemnity agreement). If the record contains testimony or affidavits that create a dispute of fact as to whether NAMI caused the School District's humidity and mold problems, CESA 10 may point to that evidence in opposing NAMI's motion for summary judgment on the indemnification claim while still maintaining that neither it nor its subcontractors were in fact negligent in the underlying lawsuit. As explained above, CESA 10 has failed to do so.

## CONCLUSION

¶39 For the reasons stated, we affirm the circuit court's order granting NAMI's motion for summary judgment and dismissing CESA 10's claims against it, and we remand to the circuit court for further proceedings on NAMI's motion for attorney's fees and costs.

*By the Court.*—Order affirmed and cause remanded for further proceedings.

Not recommended for publication in the official reports.

18